**Crystal ROBINSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 8, 1991.

Decided: Dec. 4, 1991.

Nancy Jane Perillo, Asst. Public Defender, Wilmington, for appellant.

Gary A. Myers, Deputy Atty. Gen., Dept. of Justice, Georgetown, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

CHRISTIE, Chief Justice:

The defendant/appellant, Crystal Robinson, was charged by indictment with one count of emotionally abusing Jane Roe,[1] a resident of a long-term care facility under the patient abuse statute, 16 *Del.C.* § 1136(a), and with one count of conspiring with a co-worker to commit such offense under 11 *Del.C.* § 511. Both offenses are class A misdemeanors. On May 16, 1990, as a result of a jury trial in the Superior Court, Robinson was found guilty as charged. She was sentenced to pay the costs of prosecution and a fine of $101.00 for each offense. She was also sentenced to 31 days of incarceration for each offense to be served consecutively. However, the prison sentences were suspended for three months of probation, as to each charge. Robinson now appeals those convictions.

Robinson has raised five issues on this appeal. She contends that: 1) the Superior Court erred as a matter of law by permitting the State to amend the indictment to add the *mens rea* element of "knowingly" as specified in 16 *Del.C.* § 1136(a); 2) the Superior Court abused its discretion by admitting evidence of the physical and mental condition of Roe at the time of the offense; 3) the Superior Court abused its discretion by denying Robinson's motions for a mis-

---

1. The name Jane Roe is a pseudonym selected by the Court.

trial based on the fact that the State had improperly elicited testimony that Robinson's codefendant, Yvette Jones, had entered a plea of guilty; 4) the Superior Court erred as a matter of law when it did not include the recitals made in the bill of particulars as elements of the offense in the court's instructions to the jury; and 5) the patient abuse statute, 16 *Del.C.* 1136(a), is unconstitutionally vague and overbroad under due process principles with regard to prosecutions predicated on the "emotional abuse" element, 16 *Del.C.* § 1131(1)(b), of the statute. We find each of these contentions to be without merit and, therefore, affirm the judgment of the Superior Court.

### FACTS BASED ON TESTIMONY OF STATE'S WITNESSES

The charges against Robinson arose out of an incident occurring on a Sunday morning at approximately 7:30 a.m. on August 13, 1989 in Room 400 at the nursing home facility known as the Layton Home. At the time of this incident, Robinson had been employed at the Layton Home for over two years as a nurse's aide. Room 400, which was the home for four elderly residents, was 14 feet by 14 feet in dimension. In this room, Jane Roe, eighty-five years of age, had been quietly sitting in her wheelchair. Meanwhile, two housekeepers were doing the daily housecleaning and bringing fresh linen to Roe and her roommates. While the two housekeepers were working, defendant Robinson and codefendant Jones, both of whom were employed at the Layton Home, came into Room 400. Ignoring the two housekeepers and the other residents in the room, Robinson approached Roe and allegedly stated in an "insincere" tone of voice that someone had been stealing some of Roe's clothes. This statement was not true. Roe, who was very possessive of her belongings, immediately became very upset. While the record is unclear on the exact sequence of the subsequent events, the Court will relate them as they could have been found to have occurred. Throughout this incident, the defendants and Roe maintained an abusive dialogue, which sometimes became quite loud. A total of six towels (as many as three at one time) were thrown at Roe by codefendant Yvette Jones as Roe sat confined to her wheelchair. Meanwhile, Robinson took a cup of water and, out of Roe's sight, used her fingers to throw drops of water on Roe. At the same time, Robinson mimicked the sound of spitting which further upset Roe. Roe cried out for Robinson to stop spitting on her and for the two defendants to get away from her. Apparently in response to Roe telling Robinson to "Get away from me you bitch", Robinson told her "It takes one to know one." Robinson also admitted that she had called Roe "mean" and had told her to "shut up" and had argued briefly with Roe. In the meantime, Robinson had also placed a small artificial flowerpot on Roe's head. When the flowerpot fell to the floor a second later, the defendants laughed. With Roe now yelling "bloody murder", Robinson told her to "kiss [my] butt" which prompted Roe to respond with an identical suggestion. Not to be outdone, Robinson repeated the statement a second time, stood in front of Roe, lifted her nurse's uniform, shook her rear end, and placed it on the meal table of Roe's wheelchair. Roe managed to push Robinson away and yelled that God would punish the defendants for their conduct. The entire incident lasted approximately fifteen to twenty minutes. Additional facts will be presented as necessary to address Robinson's contentions on appeal.

The defendant testified that there was a relatively brief verbal exchange and some laughter. Then she left the room without having taken part in any of the other actions outlined above. She also testified that she had none of the various intentions required by the statute.

### A.

Robinson's first contention on appeal is that the Superior Court erred as a matter of law by permitting the State to file an amended indictment which added the essential *mens rea* element of "knowingly" to the patient abuse charge which was omitted from the original indictment. Robinson

contends that this constituted a prejudicial amendment of "substance" thus requiring the reversal of both of her convictions. *See Keller v. State*, Del.Supr., 425 A.2d 152, 154–55 (1981); *Harley v. State*, Del. Supr., 534 A.2d 255, 256–57 (1987); *State v. Blendt*, Del.Super., 120 A.2d 321, 322–23 (1956); Superior Court Criminal Rule 7(e). In connection with Robinson's pretrial motion to dismiss the indictment on due process grounds, defense counsel raised the fact that the original indictment failed to include the requisite mental state for the patient abuse charge.[2] Defense counsel also raised the fact that the charge was erroneously brought under the definitional section of § 1131 rather than the violations section of § 1136(a). The Superior Court allowed the State to amend the indictment to expressly allege the statutory *mens rea* element of "knowingly" and to correct the citation from 16 *Del.C.* § 1131(a)(2) to § 1136(a).[3] *See* Superior Court Criminal Rule 7(c) (error in citation shall not be ground for dismissal of the indictment or for reversal of a conviction if the error does not mislead the defendant to his prejudice).

▆▆▆ This Court has held on several occasions that a trial court has the power to amend an indictment as to matters of form, but not as to matters of substance, so long as no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights. *Keller*, 425 A.2d at 154–55; *Harley*, 534 A.2d at 256–57; *Blendt*, 120 A.2d at 322–23; Superior Court Criminal Rule 7(e). The purpose of this rule is to assure that the accused receives notice of the charges against him so that he has an opportunity to prepare an adequate de-

fense. *Keller*, 425 A.2d at 155. However, although an indictment fails to specify the statutory *mens rea* element of "knowledge" or "intent" for the charged crime, the indictment may still be valid where other allegations contained in the indictment compel an inference of the requisite mental state. *See, e.g., United States v. Arteaga–Limones*, 529 F.2d 1183, 1199 (5th Cir.) (indictment charging illegal importation of marijuana was not fatally defective in failing to include "knowingly or intentionally" in its language, where the language used was accompanied by specification of statutory numbers, and where jury was charged that they had to find knowledge or intent in order to convict), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *United States v. Martell*, 335 F.2d 764, 765 (4th Cir.1964) (element of "knowingly" for the crime of kidnapping can be implied from allegations that the defendant seized, confined, kidnapped, abducted and carried away the victim); *Hughes v. United States*, 338 F.2d 651, 652 (1st Cir.1964). Although the original indictment against Robinson failed to expressly state the statutory *mens rea* element of "knowingly", the Superior Court correctly noted that Robinson could not be found guilty without proof of the state of mind required by the law defining the offense. 11 *Del.C.* § 251(a). In addition, we find that the allegations that Robinson emotionally abused Roe "by ridiculing, demeaning, and making derogatory remarks directed toward [Jane Roe]" compel the requisite inference that Robinson acted "knowingly" as required by 16 *Del.C.* § 1136(a). The common understanding of the terms "ridiculing", "demeaning", and

---

2. The original indictment stated in pertinent part:

   COUNT II.  MISDEMEANOR
   PATIENT ABUSE in violation of Title 16, Section 1131(a)(2), of the Delaware Code of 1974, as amended.
   CRYSTAL ROBINSON on or about the 13th day of August, 1989, in the County of New Castle, State of Delaware, did emotionally abuse [Jane Roe], a patient at Layton Home by ridiculing, demeaning, and making derogatory remarks directed toward [Jane Roe].

3. The Superior Court declined to dismiss the indictment and stated:

   Denied. Charge is not vague, esp. in light of state of mind requirement. State may file amended indictment to correct citation and to allege state of mind. This is over defense objection. There is no prejudice, because the State would be required to prove the appropriate state of mind, even if the statute did not expressly so provide. See 11 *Del.C.* §§ 103(b), 251.

"derogatory",[4] assumes that the person speaking the words or doing the acts "is aware that his conduct is of that nature" or "is aware that it is practically certain that his conduct will cause that result." 11 *Del.C.* § 231(b) (defining "knowingly"). We find that the amended indictment did not result in a new, additional, or different charge being made against Robinson and that the original indictment placed her on notice of the essential elements of the charge so that she could adequately prepare her defense. Therefore, we find no evidence of prejudice to Robinson. We conclude that the Superior Court did not err as a matter of law by allowing the State to amend the indictment to add the term "knowingly" and to correct the statutory citation.

### B.

Robinson's second contention on appeal is that the Superior Court abused its discretion by admitting evidence of Roe's physical and mental condition as it existed at the time of and after the time of the offense. Robinson contends that such evidence was irrelevant and inadmissible because the patient abuse offense focuses on the defendant's alleged actions rather than on Roe's characteristics. Even if such evidence was relevant, Robinson contends that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. D.R.E. 401, 402, and 403. We find these contentions to be without merit. When reviewing evidentiary rulings of this type, this Court recognizes that the trial court is in the best position to make informed rulings after considering all of the factors involved, and this Court will reverse only if there is a clear abuse of discretion. *See, e.g., Lynch v. State,* Del.Supr., 588 A.2d 1138, 1141 (1991); D.R.E. 103(a).

■ Evidence of Roe's physical and mental condition is highly relevant to the material issue of whether Robinson knew that her conduct towards Roe and dialogue with

Roe would be demeaning to Roe. The facts show that Roe was generally confined to a wheelchair and unable to move out of her room, that she was easily agitated and often disoriented as to time and place, and that her memory was impaired. Since Robinson was aware of these facts, a reasonable jury could easily infer that Robinson's actions (the abusive dialogue, the false statement that Roe's clothes had been stolen, the mock spitting incident, the flower pot incident, and the incident where she lifted her nurse's uniform to shake her buttocks and to tell Roe to "kiss her butt") were done with knowledge that such conduct would likely cause others to scornfully laugh at Roe. Moreover, although the introduction of evidence of Roe's physical and mental condition when viewed along with Robinson's actions might engender "undue sympathy" for Roe, it cannot be said that the Superior Court erred in its balancing of the probative value of the evidence against the potential for unfair prejudice to Robinson. D.R.E. 403. We conclude that the Superior Court did not abuse its discretion by admitting evidence of Roe's physical and mental condition as it existed at the time of and after the incident.

### C.

■ Robinson's third contention on appeal is that the Superior Court abused its discretion by denying Robinson's motions for a mistrial because the prosecution had elicited hearsay testimony that the codefendant Yvette Jones had "pled guilty to her [patient abuse] charge". Such evidence was presented through a witness from whom such testimony could not properly have been elicited without first showing that Jones was not available to testify. See D.R.E. 804(b)(3). The testimony was erroneously elicited before defense counsel had the chance to object. It is manifest, however, that not every error in admitting testimony warrants a reversal or new trial. In many instances where inadmissible evi-

---

**4.** *See, Webster's Ninth New Collegiate Dictionary* (1987) defining ridiculing at p. 1014, demeaning at p. 337, and derogatory at p. 342.

dence is placed before the jury, the appropriate remedy is a curative instruction to the jury to disregard the evidence. *Diaz v. State*, Del.Supr., 508 A.2d 861, 866 (1986); *Edwards v. State*, Del.Supr., 320 A.2d 701, 703 (1974). In determining whether the error before us requires reversal, we look to the three-pronged test adopted by this Court in *Hughes v. State*, Del.Supr., 437 A.2d 559, 571 (1981). The decisive factors are the closeness of the case, the centrality of the issue affected by the alleged error, and the steps taken to mitigate the effects of the error. Because the evidence of the defendant's guilt was very strong, and the information improperly put before the jury was not of great prejudicial significance, we find that it was within the sound discretion of the Superior Court to deny the motions for a mistrial and instead to issue an appropriate instruction to the jury to disregard the evidence. We note that Robinson's defense was based largely on her testimony that she did nothing wrong and that if improper acts took place, she took no part in them. Under these circumstances the admission of guilt by Jones which Jones made when she entered her guilty plea were at least consistent with Robinson's contention that if anyone did anything wrong it was Jones who did it. Under the circumstances, it is most unlikely that the error in admitting evidence of Jones' guilty plea was prejudicial to the defense of Robinson. In any event, the Superior Court immediately instructed the jury that "what happened in the Jones case is not relevant to this case at all and should be stricken and eliminated from your mind." We are satisfied that the admission of the evidence was harmless beyond a reasonable doubt and that the curative instruction was legally effective to cure any error which was made.

### D.

Robinson's fourth contention on appeal is that the Superior Court erred as a matter of law when it failed to include in its instruction to the jury, as requested by defense counsel, that the State was required to prove the alleged acts set forth in its bill of particulars [5] as to each of the offenses charged. Defense counsel noted an exception to that omission and now contends that the failure of the trial court to give the requested charge constituted reversible error. We find this contention to be without merit.

■ In the case of *Taylor v. State*, Del. Supr., 464 A.2d 897, 899 (1983), this Court held that "[t]o assure a fair and impartial trial, a jury must be adequately informed by the Court ... [as to] all of the essential elements of the offense." At trial, there was no variance between the factual allegations in the bill of particulars and the evidence presented by the prosecution. The Superior Court used a standard form of jury instruction which included a definition of each of the essential statutory elements of the offense. Robinson has not cited any Delaware case which holds that a bill of particulars must be discussed in a jury instruction. The purpose of a bill of particulars is to further apprise a defendant of what he may expect to meet at trial. In the case of *United States v. Francisco*, 575 F.2d 815, 819 (10th Cir.1978), the court stated: "[w]hile ... it was not reversible error to submit a bill of particulars to a jury, we indicated it was undesirable to do so." *See, e.g., United States v. Nathan*, 816 F.2d 230, 235 (6th Cir.1987); *Pipkin v. United States*, 243 F.2d 491, 494 (5th Cir. 1957) ("No useful purpose could have been served by reading [the bill of particulars] to the jury. Indeed it would have been error to read it."). We find that these comments have merit, and we hold that the Superior Court did not err when it failed to include an instruction about the bill of particulars in its instructions to the jury.

---

5. In response to Robinson's request for a bill of particulars, the State's answer stated in pertinent part:
    The defendant put a flower pot over the victim's head, pulled up her dress and said "kiss my butt." She also pretended to spit on the victim.

The defendant along with the codefendant threw towels at the victim. They teased her and called her names using words to the effect of "old hag," "bitch," etc.

#### E.

Robinson's final contention on appeal is that the Superior Court erred as a matter of law by denying her pretrial motion to dismiss the indictment because the patient abuse statute is unconstitutionally vague and. overbroad on its face as to prosecutions predicated on the emotional abuse element. The Superior Court found that the patient abuse statute was not unconstitutionally vague especially in light of the requirement that the offender must act "knowingly" with respect to the act(s) of abuse.[6] We agree with the Superior Court's ruling that the patient abuse statute is not unconstitutionally vague or overbroad.

An approach to this issue is suggested by the following statement of the United States Supreme Court: "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a *substantial* amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge, and assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Est.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982) (emphasis added). Thus, "[a] law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Village of Hoffman Estates v. Flipside, Hoffman Est.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982).

#### 1. Overbreadth

We first examine the legislative purpose of the patient abuse statute. Concerned that patients and residents of long-term care facilities are sometimes subjected to conduct not fully covered by traditional criminal statutes, the General Assembly, in 1986, enacted the patient abuse statute which prohibits the abuse, neglect, and mistreatment of patients and residents of long-term care facilities. 65 Del. Laws ch. 442 (July 7, 1986) (synopsis); codified at 16 *Del.C.* § 1136(a) (Supp.1990). The patient abuse statute is consistent with earlier legislation which also sought to protect the essential dignity of patients and residents of nursing homes and long-term care facilities. *See* 16 *Del.C.* § 1121(1) ("Every patient and resident shall be treated with consideration, respect, and full recognition of his or her dignity and individuality.").

Specifically, the patient abuse statute is "designed to protect one of the most vulnerable segments of our society.... The victims of patient abuse are often at the mercy of the[ir] tormentors, are dependent upon them for daily needs, and are therefor, reluctant to report incidents committed against them. Many times, victims are unable because of physical or mental disabilities, to effectively communicate what is being done to them." 65 Del. Laws ch. 442 (July 7, 1986) (synopsis). Thus, when confronted with offensive, insulting, or abusive language, patients and residents may have "no choice but to sit and listen, or perhaps to sit and try *not* to listen." *Lehman v. City of Shaker Heights*, 418 U.S. 298, 307, 94 S.Ct. 2714, 2719, 41 L.Ed.2d 770, 779–80 (1974) (Douglas, J., concurring).

Therefore, in addition to enacting a specific, mandatory system for reporting incidents of patient abuse, the patient abuse statute made it a criminal offense for any person to knowingly abuse, mistreat, or neglect a patient or resident of a private or state-owned facility.[7] 16 *Del.C.* § 1136(a).[8]

---

**6.** *See supra* note 3.

**7.** 16 *Del.C.* § 1131 states in pertinent part:

    (4) "Facility" shall include any facility required to be licensed under this chapter. It shall also include any facility operated by or for the State which provides long-term care residential services.

**8.** 16 *Del.C.* § 1136(a) states:

    Any person who knowingly abuses, mistreats or neglects a patient or resident of a facility shall be guilty of a class A misdemean-

The proscribed "abuse" covers not only physical abuse, 16 *Del.C.* § 1131(1)(a), but also emotional abuse "which includes, but is not limited to, ridiculing or demeaning a patient or resident, making derogatory remarks to a patient or resident or cursing directed towards a patient or resident, or threatening to inflict physical or emotional harm on a patient." 16 *Del.C.* § 1131(1)(b).

With this legislative purpose in mind, we next consider whether the patient abuse statute reaches a *substantial* amount of constitutionally protected speech or is overbroad because it inhibits the First Amendment rights of other parties. Although the First Amendment generally protects speech from content-based regulations, the First Amendment does not protect all speech. *See, e.g., F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 744, 98 S.Ct. 3026, 3038, 57 L.Ed.2d 1073, 1090 (1978). The United States Supreme Court has removed certain categories of speech from First Amendment protection. These categories include fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), obscenity, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), words tending to incite riot, *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), and to a limited extent libel, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Moreover, it must be recognized that "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 799, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567, 578 (1985). Thus, the State has been permitted "to prohibit offensive speech as intrusive when [a] 'captive' audience cannot avoid the objectionable speech." *Frisby v. Schultz*, 487 U.S. 474, 487, 108 S.Ct. 2495, 2503, 101 L.Ed.2d 420, 433 (1988); *see, e.g., F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 748–49, 98 S.Ct. 3026, 3040–41, 57 L.Ed.2d 1073, 1093 (1978) (offensive radio broadcasts); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 307–

08, 94 S.Ct. 2714, 2719, 41 L.Ed.2d 770, 779–80 (1974) (advertisements on public buses and streetcars); *Rowan v. United States Post Office Dept.*, 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736, 743 (1970) (offensive mailings); *Kovacs v. Cooper*, 336 U.S. 77, 86–87, 69 S.Ct. 448, 453–54, 93 L.Ed. 513 (1949) (sound trucks); *see also Cohen v. California*, 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284, 291–92 (1971).

In cases dealing with captive audiences, the United States Supreme Court has balanced the First Amendment rights of the speaker against the State's interest in protecting the privacy rights of the captive audience. *See, F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 748, 98 S.Ct. 3026, 3040, 57 L.Ed.2d 1073, 1093 (1978); *Cohen v. California*, 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284, 291–92 (1971); *Rowan v. United States Post Office Dept.*, 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736, 743 (1970); *Martin v. City of Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313, 1317 (1943). In the case of *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), the United States Supreme Court held that the F.C.C. possessed the authority to impose sanctions on licensees who engage in obscene, indecent, or profane broadcasting and was warranted in its conclusion that the radio broadcast of a prerecorded monologue entitled "Filthy Words" was indecent and offensive and thus prohibited by statute. *See* 47 U.S.C. § 326. The Court ruled that "[p]atently offensive, indecent material presented over the airwaves confronts the citizen, not only in public, but also in the privacy of the home, where the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder." *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 748, 98 S.Ct. 3026, 3040, 57 L.Ed.2d 1073, 1093 (1978).

■ In the case of *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the United States Supreme Court

or. Where the abuse, mistreatment or neglect results in serious physical injury when such person shall be guilty of a class D felony.

Where the abuse, mistreatment or neglect results in death then such person shall be guilty of a class A felony.

upheld against an overbreadth and vagueness challenge a content-neutral ordinance which prohibited picketing in a traditionally public forum where the picketing focused on a single residence (a captive audience). The Court emphasized the significant State interest in preserving the sanctity of the home. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home, 'the last citadel of the tired, the weary, and the sick'." *Frisby*, 487 U.S. 474, 484, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420, 431 (1988). Moreover, the Court recognized that residential privacy includes the protection of the unwilling listener. The Court stated:

> Although in many locations, we expect individuals simply to avoid speech they do not want to hear, cf. *Erznoznik v. Jacksonville, supra,* 422 U.S. [205] at 210–211, 95 S.Ct. [2268], at 2273–74 [45 L.Ed.2d 125 (1975)]; *Cohen v. California,* 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786–1787, 29 L.Ed.2d 284 (1971), the home is different. "That we are often 'captives' outside the sanctuary of the home and subject to objectionable speech ... does not mean we must be captives everywhere." *Rowan v. Post Office Dept.,* 397 U.S. 728, 738, 90 S.Ct. 1484, 1491, 25 L.Ed.2d 736 (1970). Instead, a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom. *See, e.g., FCC v. Pacifica Foundation,* 438 U.S. 726, 748–749, 98 S.Ct. 3026, 3039–3040, 57 L.Ed.2d 1073 (1978) (*offensive radio broadcasts*); *id.,* at 759–760, 98 S.Ct. at 3045–3047 (Powell, J., concurring in part and concurring in judgment) (same); *Rowan, supra (offensive mailings); Kovacs v. Cooper,* 336 U.S. 77, 86–87, 69 S.Ct. 448, 453–54, 93 L.Ed. 513 (1949) (*sound trucks*).

*Frisby,* 487 U.S. 474, 484–85, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420, 431–32 (1988). Thus, it is clear that the State has a significant interest in protecting captive audiences from intrusive and offensive speech in the privacy of the home. While residents and patients, by necessity, allow others to come into their "home" to help take care of their personal needs, we find that such authorization does not result in a waiver of their right to privacy or their right to be free from sudden and unexpected offensive and insulting conduct or speech. *Cf. F.C.C. v. Pacifica Foundation,* 438 U.S. 726, 748, 98 S.Ct. 3026, 3040, 57 L.Ed.2d 1073, 1093 (1978) (opinion of Stevens, Burger, and Rehnquist, JJ.) (even though resident "invites" broadcasts into his home by turning on the radio, government can bar offensive broadcast to protect resident against sudden and unexpected offensive invasion). Moreover, we find no reason to distinguish between the residential privacy rights possessed by patients and residents of long-term care facilities and the residential privacy rights of a residential homeowner which were recognized in *Frisby.*

We recognize that the patient abuse statute is a content-based regulation as to offenses predicated on the emotional abuse element, and it reaches speech which would be protected from government restriction if it occurred in a public setting. However, after carefully weighing the First Amendment rights of a person charged with emotional abuse under 16 *Del.C.* § 1136(a) against the significant State interest in protecting the residential privacy rights of a "captive" patient or resident of a long-term care facility, we conclude that the patient abuse statute does not reach a *substantial* amount of constitutionally protected speech as required by *Flipside* in order to justify a facial overbreadth challenge. Therefore, Robinson's facial overbreadth challenge fails.

### 2. Vagueness

We next examine whether the patient abuse statute is unconstitutionally vague on its face as to prosecutions predicated on the emotional abuse element. At the out-

set, we first examine the parameters for criminal liability for emotional abuse under sections 1136(a) and 1131(1)(b). First, the patient abuse statute only grants protection to patients and residents present within a "facility". Second, "ridiculing" or "demeaning" speech or conduct directed at a patient or resident or "derogatory remarks" made about a patient or resident or "cursing" directed towards a patient or resident are not subject to criminal sanction unless: 1) the prohibited act(s) occur within a facility [9]; 2) the prohibited act(s) were targeted at or directed towards a patient or resident of the facility; and 3) the defendant performed the prohibited act(s) "knowingly". Furthermore, the standard of liability is an objective one; a defendant's speech or conduct must be of the kind that reasonable people would recognize, in the *context* that they were done or spoken, as being ridiculing, demeaning, or derogatory in nature or as constituting cursing. *See, F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 748, 750, 98 S.Ct. 3026, 3042, 57 L.Ed.2d 1073, 1094 (1978) ("context is all important" and indecency "cannot be adequately judged in the abstract").

With the foregoing parameters in mind, we continue with our examination of Robinson's facial vagueness challenge. "As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.[10] ... Where the legislature fails to provide minimal guidelines [for government law enforcement], a criminal statute may permit 'a standardless sweep that allows police-

men, prosecutors, and juries to pursue their personal predilections.' " *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903, 909 (1983); *see Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972). In the case of *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596, 609 (1979), the Court also recognized that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" Thus, "[t]he requirement than [an] act must be willful or purposeful ... relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware.". *Colautti v. Franklin*, 439 U.S. 379, 395 n. 13, 99 S.Ct. 675, 685 n. 13, 58 L.Ed.2d 596, 609 n. 13 (1979); *Village of Hoffman Estates v. Flipside, Hoffman Est.*, 455 U.S. 489, 499 n. 14, 102 S.Ct. 1186, 1193 n. 14, 71 L.Ed.2d 362, 372 n. 14 (1982).

■ In view of the parameters of the patient abuse statute and the particular facts of this case, we are satisfied that any reasonable person would recognize that Robinson's speech and conduct (the abusive dialogue, the false statement that Roe's clothes had been stolen, the mock spitting incident, the flower pot incident, and the incident where Robinson lifted her nurse's uniform to shake her buttocks and to tell Roe to "kiss her butt") directed towards Jane Roe, an elderly patient confined to a wheelchair in a facility, clearly fell within the common understanding of the statutory terms "ridiculing" and "demeaning".[11] *See Grayned v. City of Rockford*, 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222, 230 (1972) (upholding antinoise ordinance

9. *See supra* note 7.

10. The United States Supreme Court has indicated that a more stringent vagueness test should apply where a law interferes with the right of free speech. *Village of Hoffman Estates v. Flipside, Hoffman Est.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1194, 71 L.Ed.2d 362, 372 (1982).

11. We find that legislatures routinely use synonymous words in criminal statutes without constitutional difficulty. *See, e.g.,* 11 *Del.C.* § 1311(1) (person commits "harassment" when

he "insults, taunts or challenges another person or engages in any other course of alarming or distressing conduct"); Model Penal Code § 250.-4(2) (P.O.D.1962) (same). *Cf. City of Seattle v. Huff*, 111 Wash.2d 923, 767 P.2d 572, 573, 576 (1989) (upholding criminal statute prescribing use of telephone to "harass" and "torment"); *State v. Cropley*, Me.Supr. 544 A.2d 302, 305 (1988) (upholding statute making it a crime to perform acts with the intent to "harass, torment, or threaten another person").

which "clearly delineates its reach in words of common understanding"). In addition, we find that the State satisfied its burden of proving that Robinson performed the above acts "knowingly"; that Robinson was "aware that [her] conduct [was] of that nature" or was "aware that it was practically certain that [her] conduct [would] cause" Roe to "be the object of scornful laughter" and to be "degraded" and "lowered in status and character." *See* 11 *Del.C.* § 231(b) (defining knowingly); *see Webster's New World Dictionary* (2nd college ed. 1986) defining "ridicule" at p. 1224 and "demean" at p. 375. Therefore, Robinson, as a person to whom the patient abuse statute clearly applies, cannot challenge the statute on the basis that others, whose speech or conduct might approach the periphery of the statutory language, might not be able to discern the limits of the criminal proscription. *Village of Hoffman Estates v. Flipside, Hoffman Est.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982).

Having carefully examined the reach of the patient abuse statute, we rule that the patient abuse statute defines the criminal offense of emotional abuse with sufficient definiteness such that ordinary people can understand what conduct is prohibited. We also rule that the parameters of the patient abuse statute provide sufficient law enforcement guidelines or standards which foreclose the risk of arbitrary or discriminatory enforcement of this statute. Therefore, Robinson's facial vagueness challenge fails.

### Conclusion

For the reasons stated, the judgment of the Superior Court is AFFIRMED.