# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,     )
        )
    Plaintiff,     )
        )
    v.     )     C.A. No.: 2508011921
        )
MCKENZIE S. BEASLEY,     )
        )
    Defendant.     )

Submitted: April 24, 2026
Decided: June 16, 2026

## MEMORANDUM OPINION AND DECISION ON DEFENDANT'S MOTION TO SUPPRESS (DUI CASE)

Marc C. Petrucci, Esq. *Deputy Attorney General.*

James M. Stiller, Jr., Esq. *Counsel for Defendant.*

**Manning, J.**

## Introduction

On August 21, 2025, McKenzie S. Beasley ("Ms. Beasley") was arrested at her home in Middletown, Delaware, for the offenses of Driving Under the Influence of Alcohol ("DUI")[1] and Failure to Remain within a Single Lane.[2] Ms. Beasley filed a Motion to Suppress, pursuant to Court of Common Pleas Criminal Rules 12(b) and 41(f). She moves this Court to suppress all evidence of wrongdoing and dismiss the case with prejudice; or in the alternative, to exclude from evidence all statements made by Ms. Beasley on August 21, 2025, to agents of the Delaware State Police and the results of any field sobriety tests or chemical or alcohol tests done by Ms. Beasley on that date. Ms. Beasley contends that any test result or statement she made was the product of an illegal stop, detention, and arrest, in violation of her constitutional rights.

On March 18, 2026, this Court held a hearing on Ms. Beasley's Motion. Following testimony from the arresting officer, Corporal Emmanuel Velez, of the Delaware State Police ("Cpl. Velez") and a review of relevant Body Worn Camera (BWC) footage, I raised several issues *sua sponte*: (1) whether Cpl. Velez's entry into Ms. Beasley's garage was supported by a recognized exception to the warrant requirement; (2) whether the "tip" from the concerned citizen was sufficient to

---

[1] In violation of 21 *Del. C.* § 4177(a)(5).
[2] In violation of 21 *Del. C.* §4122(1).

2

provide Cpl. Velez with reasonable articulable suspicion; and, in response to Cpl. Velez's testimony that the Community Caretaker Doctrine permitted him to enter Ms. Beasley's home, (3) whether the Community Caretaker Doctrine allows an officer to conduct a warrantless entry into a suspect's home, absent facts to suggest the suspect was seriously injured or under an imminent threat of injury. At the conclusion of the hearing, the parties were given the opportunity to submit supplemental briefing on the matters. The State has since conceded that the Community Care Doctrine does not apply to the present facts; thus, my considerations will not include it.

## FACTS

On August 21, 2026, Cpl. Velez was patrolling the Middletown area in his police vehicle. Just prior to 10:00 p.m., he received an alert[3] that a concerned citizen[4] called 911 to report that a dark colored Hyundai Sorrento ("Sorrento"), with a Delaware temporary license plate numbered XQ66894, was swerving erratically and traveling on the wrong side of the roadway, around Marl Pit Road and Shallcross Lake Road in Middletown, Delaware. Cpl. Velez quickly executed a vehicle registration search and confirmed that the reported tag number was in fact registered

---

[3] Via Kentcom—a regional organization charged with fielding emergency calls and dispatching officers to respond to those emergency calls.

[4] Whose name and phone number were collected by Kentcom and documented by Cpl. Velez in his report.

to a Hyundai Sorento. The Sorento in question was owned by Ms. Beasley, whose address was in his vicinity. He then drove to that address, without his emergency lights or siren activated, arriving approximately 11 minutes after receiving the alert.

Upon arrival, Cpl. Velez parked in front of the home and proceed to walk up the driveway. BWC footage shows the Sorrento parked in the open garage with its taillights illuminated. Cpl. Velez approached the garage as Ms. Beasley exited the driver's door of the Sorrento and began to engage her in conversation. From the threshold of the garage, Cpl. Velez asked Ms. Beasley how she was doing, if she had just got home, and if he could talk to her. Ms. Beasley responded, "no." Cpl. Velez then asked her why not, to which Ms. Beasley responded, "why?" Cpl. Velez then stated that the police department had received a call from a concerned citizen about her and asked her to "come here real quick." Ms. Beasley again responded, "no," as she moved deeper into the garage, away from the officer. Cpl. Velez then pulled out his flashlight, entered the garage, and said to Ms. Beasley, "come here." She put her hands up, backed up, and stated repeatedly, "I'm in my house." Cpl. Velez said again, "come here," to which she responded, "I'm in my house." At that point, Cpl. Velez grabbed Ms. Beasley by the arm, pulling her out of her garage and onto the

4

driveway, informing her that she was not free to go. At the hearing, Cpl. Velez testified that Ms. Beasley's speech was slurred throughout the interaction.[5]

## PARTIES' CONTENTIONS

The State argues that (1) Cpl. Velez's warrantless entry into Ms. Beasley's garage was lawful because the exigencies of the situation created a compelling law enforcement need—both to prevent escape[6] and to prevent the destruction of evidence;[7] (2) and that it was reasonable for Cpl. Velez to rely on and act upon the tip given by the concerned citizen, because his successful registration search and subsequent discovery of the vehicle matching the description, bolster the concerned citizen's credibility, and there was no indication that the concerned citizen had any incentive to fabricate such a report.

Ms. Beasley argues that (1) absent exigent circumstances, Cpl. Velez was required to obtain a warrant before entering her garage to detain her; (2) the exigencies of the situation did not create a compelling law enforcement need to prevent the imminent destruction of evidence, because "imminent destruction" of

---

[5] Cpl. Velez would subsequently conduct a DUI investigation and place Ms. Beasley under arrest for DUI and subject her to chemical BAC testing.

[6] Ms. Beasley's home is "located in a large residential development, made up of dozens of single-family homes. . . the area was dark, particularly the areas between and behind the homes, and Cpl. Velez did not have any other troopers present to assist him. Thus, there was no realistic way for Cpl. Velez to quickly secure the area and obtain a warrant."

[7] Dissipation of the alcohol in Ms. Beasley's blood due to time delay in obtaining a warrant.

5

the alcohol in Ms. Beasley's blood is not a sufficient justification for failing to obtain a warrant; (3) the exigencies of the situation did not create a compelling law enforcement need to prevent escape, because Ms. Beasley did not display an intent to escape, rather she retreated away from him out of fear; and finally, Ms. Beasley asserts that (4) because Cpl. Velez did not witness her commit a traffic violation, nor did he directly follow up with the concerned witness; he was without reasonable articulable suspicion or probable cause to contact Ms. Beasley inside her home.

## LEGAL STANDARD

On a motion to suppress evidence obtained absent a warrant, it is the State's burden to prove—by a preponderance of the evidence—that the search or seizure in question did not violate the defendant's rights under either the Delaware State Constitution, the United States Constitution, or Delaware statutory law.[8]

## DISCUSSION

I. **The tip from the concerned citizen was sufficient to give Cpl. Velez reasonable articulable suspicion to stop and seize Ms. Beasley.**

There are two issues presently before the Court. I will address them chronologically. The first is whether the tip from the concerned caller was sufficient

---

[8] *State v. Kent*, 2022 WL 5419653, at *2 (Del. Super. Ct. Oct. 7, 2022), *aff'd*, 304 A.3d 951 (Del. 2023) (citing *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001)).

to give Cpl. Velez reasonable articulable suspicion to conduct a stop on Ms. Beasley. I find that it was.

In *Bloomingdale v. State*,[9] the Delaware Supreme Court held that an officer may "make an initial, brief, investigatory stop based on an anonymous tip of erratic driving,"[10] so long as the tip has sufficient indicia of reliability; such as "an accurate description of the vehicle, its license tag number, its location and direction of travel, or other details, to enable the officer to be certain she has identified the correct vehicle."[11] The Court reasoned that "a tip reporting erratic driving is more reliable than one reporting a concealed, possessory offense because the offense is carried out in public and may be observed by any passerby."[12] The Court recognized that "[u]nlike a concealed crime, a tipster reporting erratic driving requires no inside information or special basis of knowledge for her conclusion that criminal activity is occurring."[13]

In the case at hand, it appears that the tip in question was a detailed description of Ms. Beasley's vehicle, her vehicle's tag number, and a report of the concerned citizen's impression of Ms. Beasley's driving. While the tip did not contain any predictive information about Ms. Beasley's criminal activity, it did not need to

---

[9] *Bloomingdale v. State*, 842 A.2d 1212 (Del. 2004).
[10] *Id.* At 1222.
[11] *Id.*
[12] *Id.* At 1219.
[13] *Id.*

because it was merely a report of erratic driving—readily observed by the public without any concealed activity. Accordingly, under *Bloomingdale*, the tip here was sufficient to give Cpl. Velez reasonable articulable suspicion to conduct a stop on Ms. Beasley. However, because Ms. Beasley was within her home at the time Cpl. Velez initiated his investigation, further analysis is necessary.

**II.    Cpl. Velez's entry into the garage and subsequent seizure of Ms. Beasley was not legally justified.**

The Fourth Amendment of the United States Constitution, made applicable to the states via the Fourteenth Amendment, "protects the citizenry from unwarranted governmental searches and seizures."[14] The United States Supreme Court has stated that the "Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."[15] Article I, § 6 of the Delaware Constitution states that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."[16] In effect, the Fourth Amendment and Article I, § 6 of the Delaware Constitution (collectively, the "Amendments") prohibits law enforcement "from making a warrantless, nonconsensual entry into a person's home for purposes

---

[14] *Diggs v. State*, 257 A.3d 993, 1003 (Del. 2021).
[15] *Payton v. New York*, 445 U.S. 573, 589 (1979).
[16] Del. Const. art. I, § 6.

8

of search or seizure."[17]  However, the Amendments do permit such an entry into a person's home "if 'the police can show that it falls within one of a carefully defined set of exceptions' to the warrant requirement," known as "exigent circumstances."[18]

Courts in this State have found exigent circumstances to justify a warrantless intrusion where there is hot pursuit of a fleeing felon or misdemeanant, a risk of imminent destruction of physical evidence, the need to prevent a suspect's escape, or a risk of danger to police or others in the vicinity of the dwelling.[19]  Courts recognize the following list of factors as relevant in determining exigency:

> (1) the degree of urgency involved and the amount of time needed to obtain a warrant;
>
> (2) the reasonable belief the contraband is about to be removed;
>
> (3) the risk of danger to the police guarding the site while waiting for the search warrant;
>
> (4) police information that the suspects are aware the police are on their trail;
>
> (5) police knowledge that traffickers of the suspected contraband characteristically attempt to dispose of destructible contraband and escape.[20]

---

[17] *State v. Foreman*, 2019 WL 4125596, at *3 (Del. Super. Ct. 2019) (citing *State v. Keith*, 2010 WL 8250816, at *3 (Del. Super. July 30, 2010)).

[18] *State v. Palmer*, 2016 WL 3044499, at *4 (Del. Super. Ct. 2016) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)); *See also Keith*, 2010 WL 8250816, at *5 (citing *State v. Wilson*, 2001 WL 845749, at *3 (Del. Super. Ct., 2001) ) ("Absent consent, warrantless searches and seizures are presumed unreasonable and violative of the Fourth Amendment, even when supported by probable cause, unless exigent circumstances exist to justify the intrusion.")

[19] *Keith*, 2010 WL 8250816, at *5 (quoting *State v. Wilson*, 2001 WL 845749, at *3 (Del.Super. Ct. July, 6, 2001)).

[20] *Keith*, 2010 WL 8250816, at *5 (quoting *Wilson*, 2001 WL 845749, at *3).

In the present matter, neither party has asserted that the search in question was done to ensure the safety of officers, the suspect, or anyone else. The State contends that the exigencies of hot pursuit,[21] imminent destruction of physical evidence, and the need to prevent escape justified warrantless entry into Ms. Beasley's garage.

In their respective briefs, both parties invite me to apply the United States Supreme Court's decision in *Lange v. California*[22] favorably to their points of view. In that case, Lange drove past a California Highway Patrol officer.[23] As he drove by, he played music loudly and blared his horn.[24] His behavior caught the officer's attention. The officer followed Lange and activated his emergency lights to prompt Lange to pull over.[25] However, Lange elected to drive approximately 100 feet farther than where the officer intended to stop him and pulled into his own garage.[26] The officer followed Lange into his garage, observed signs of intoxication, detained him, and put him through field sobriety tests.[27] Lange moved to suppress all evidence obtained after the officer entered his garage, arguing that the warrantless entry violated his Fourth Amendment Rights.[28] The issue before the Supreme Court in *Lange* was whether to impose a blanket exception to the Fourth Amendment's

---

[21] Often referred to as "fresh pursuit."
[22] *Lange v. California*, 594 U.S. 295 (2021).
[23] *Id.* At 299.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Lange*, 594 U.S. at 299.
[28] *Id.*

warrant requirement for the flight of a suspected misdemeanant.[29] It refused to do so. The Court recognized that it had on multiple occasions, "declined to expand the scope of exceptions to the warrant requirement to permit warrantless entry into the home,"[30] and it was "not eager ... to print a new permission slip for entering the home without a warrant."[31] It stated that on many occasions, officers "will have good reasons to enter [the home]—to prevent imminent harms of violence, destruction of evidence, or escape from the home. But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled."[32]

The *Lange* Court, however, did not make a finding on whether the facts of that case justified the officer's warrantless entry into Lange's garage or Lange's detention. It merely rejected a blanket exception to the warrant requirement for fleeing misdemeanants and acknowledged that future inquiries of the sort will require a fact-dependent, case-by-case analysis.[33] Therefore, my analysis—much like Lange in his car—will proceed ahead.

The State asserts that the exigencies of hot pursuit,[34] imminent dissipation of alcohol from Ms. Beasley's blood, and the need to prevent Ms. Beasley's escape

---

[29] *Id.* At 313.
[30] *Id.* (quoting *Caniglia v. Strom*, 593 U.S. 194 (2021)) (internal quotation omitted).
[31] *Id.* At 303.
[32] *Lange*, 594 U.S. at 313.
[33] *Id.*
[34] *See* 11 *Del. C.* § 2302, "A search of a person, house, building, conveyance, place or other thing may be made without a warrant if the search is made for the person hotly pursued provided the pursuer has probable cause to believe that such person has committed a felony or a misdemeanor."

11

justified Cpl. Velez's entry into Ms. Besley's home and his subsequent detention of her. I disagree.

In *State v. Keith*, the Delaware Superior Court dealt with a similar question of law, but with facts considerably more compelling than those at play here, yet it still ruled against a warrantless entry into the defendant's home. In *Keith*, an off-duty police officer observed the defendant commit multiple driving infractions, exhibit erratic behavior consistent with an intoxicated driver, and when he attempted to stop her, she drove away.[35] The off-duty officer called 911, reported the driver, and requested that an on-duty police officer go to the defendant's home.[36] Upon arrival at the defendant's home, the on-duty policeman knocked on the door and, once it was opened, he did not wait for permission before entering the home.[37] The officer arrested the defendant and stated that she had a strong odor of alcohol, bloodshot eyes, and slurred speech.[38] There, the Superior Court found "insufficient exigency in the factual background of the case to justify warrantless intrusion" into the defendant's home.[39] The Court reasoned that the state did not establish "any credible degree of urgency in making [the] arrest, nor that it would have taken unduly long for [the officer] to obtain a warrant from a neutral and detached magistrate."[40] It

---

[35] *Keith*, 2010 WL 8250816, at *1.
[36] *Id.*
[37] *Id.* At *2.
[38] *Id.*
[39] *Id.* At *5.
[40] *See Keith*, 2010 WL 8250816, at *5.

also recognized that the facts did not demonstrate "concern of removal of contraband or police safety in watching the home while waiting for a warrant."[41] Finally, it noted that while the defendant knew the police were "on her trail," the officer did not have concern that the defendant might try to escape the residence.[42] The Court held that the state failed to justify the warrantless entry and noted that police "must obtain and use warrants whenever reasonably practicable, and their unexplained failure to secure a warrant when they had enough time to do so mandates a finding that the search or seizure was unlawful."[43]

Upon consideration of the relevant factors, I find this case analogous to *Keith*.[44] Here, the State has not carried its burden of establishing sufficient urgency to make the arrest, nor did it establish that any effort by Cpl. Velez's in obtaining a warrant from a neutral and detached magistrate before entering the home would have taken an unduly long period amount of time. Additionally, there was no indication that there was a concern for removal of contraband—merely the dissipation of alcohol in

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *See also State v. Greer*, 2007 WL 442228 (Del. C.P. 2007) (In this case, the officer witnessed the defendant commit several traffic violations and suspected he was driving under the influence of alcohol. The defendant refused to stop for the officer's emergency lights. The officer followed the defendant to his home and entered without consent. The court held that the State did not establish urgency in making the arrest, nor that it would take unduly long for the officer to radio for assistance to secure the home while waiting for a warrant, nor was there a genuine concern that the defendant would escape, and therefore the officer's unexplained failure to secure a warrant mandated a finding that the search was unlawful.).

Ms. Beasley's blood, which, once again, goes back to the State's failure to assert that it would have taken Cpl. Velez unduly long to electronically apply for a warrant. Further, upon review of the relevant BWC footage, although Ms. Beasley became aware that Cpl. Velez was outside her garage; it does not appear she intended to flee her home; rather, she intended to enter her home, as she repeatedly stated, "I'm in my home."[45]

When Cpl. Velez chose to enter Ms. Beasley's garage, he was required to either have a warrant or probable cause to believe that she committed an offense.[46] He had neither. Arguably, at best, he had reasonable articulable suspicion for a traffic violation—which is insufficient to justify a warrantless intrusion into a person's home.[47] While this suspicion may have been enough to initiate a traffic stop had Cpl. Velez observed Ms. Beasly operating her vehicle in public, it is insufficient to justify a warrantless entry into a home.[48]

---

[45] To which Cpl. Velez stated, "Your home is not a safe space." To this, I must disagree. Constitutionally speaking, one's home is perhaps the *safest space*. *See Robinson v. State*, 600 A.2d 356, 364 (Del. 1991) (quoting *Frisby v. Shultz* 487 U.S. 474, 484 (1988) ("'The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home, 'the last citadel of the tired, the weary, and the sick'.'").

[46] *See supra*. at note 45.

[47] *See Swanson v. State*, 351 A.3d 496, 510 (Del. 2025) (quoting *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003) ("'Reasonable and articulable suspicion is a less stringent standard than the probable cause standard and requires a quantum of proof that is less than preponderance of the evidence.").

[48] *See Id.* At 510 (quoting *Register v. State*, 337 A.3d 1224, 1234 (Del. 2024)) ("'[L]aw enforcement officers may stop or detain an individual for investigatory purposes, but only if the officer has reasonable articulable suspicion to believe the individual to be detained is committing, has committed, or is about to commit a crime.'").

14

## CONCLUSION

I find, consistent with the Superior Court's holding in *Keith* and this Court's previous ruling in *Greer*, that the State has failed to demonstrate that either probable cause to arrest, or an exigent circumstance existed to justify the nonconsensual entry into Ms. Beasley's home. Therefore, the State did not carry its burden to prove by a preponderance of the evidence that Ms. Beasley's rights were not violated by Cpl. Velez's warrantless entry into her garage and her subsequent arrest. As discussed above, the failure by law enforcement to secure a warrant when they had sufficient time to do so mandates a finding that the search and seizure was unlawful. Accordingly, Ms. Beasley's Motion to Suppress is hereby **GRANTED**, and any evidence obtained by the State after Cpl. Velez's entry into the garage is suppressed.

**It is so ordered**, this 16th day of June 2026.

Bradley V. Manning,
Judge