# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GO4PLAY, INC., d/b/a Bendover, a )
Delaware corporation, and 5455 DUPONT )
HIGHWAY, LLC, a Delaware limited )
liability company, )
     Petitioners, )
           )   C.A. No. K21A-01-003 NEP
  v.         )
           )
THE KENT COUNTY BOARD OF )
ADJUSTMENT, )
           )
     Respondent. )

Submitted: April 8, 2022
Decided: July 12, 2022

## OPINION AND ORDER

*Upon Appeal from the Decision of the Kent County Board of Adjustment*

## REVERSED

John W. Paradee, Esquire, Stephen A. Spence, Esquire, and Brian V. DeMott, Esquire, Baird Mandalas Brockstedt, LLC, Dover, Delaware, *Attorneys for Petitioners.*

Frederick A. Townsend, III, Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Dover, Delaware, *Attorney for Respondent*.

**Primos, J.**

Before this Court is an appeal from a decision of the Kent County Board of Adjustment (hereinafter the "Board"), which is also the respondent on appeal. The petitioners are Go4Play, Inc., d/b/a Bendover (hereinafter "Go4Play"), and 5455 Dupont Highway, LLC ("5455" and, collectively, "Petitioners"). Petitioners are appealing the Board's decision upholding the determination of the Kent County Department of Planning Services (hereinafter the "Department") that Go4Play's business, which is located on the property of 5455, is an adult entertainment establishment pursuant to Section 205-6 of the Kent County Code (hereinafter the "Ordinance"), and must therefore obtain conditional use approval from the governing body of Kent County, the Kent County Levy Court (hereinafter the "Levy Court"). For the reasons that follow, the Board's decision is **REVERSED.**

## I. FACTUAL AND PROCEDURAL HISTORY

On June 16, 2020, in response to complaints from the public, mostly related to a sign constructed at the business location by Go4Play, Department official Brian Reed visited the business location. At the time of the visit, the store was being stocked, and the owner, Ofir Bouzaglo, willingly[1] allowed the Department to photograph the store's merchandise. Following his inspection, Reed issued a stop work order.[2] On June 22, 2020, Bouzaglo sent an email to Reed indicating

_____

[1] Tab 5, Hr'g Tr. 65:2–4.
[2] It is unclear from the record why the stop work order was issued. According to Reed, it was issued because Go4Play had neither a building permit nor a sign permit. Go4Play's owner testified at the hearing that he had the required permits and that Sarah Keifer, the Department's Director, told him, "We just wanted to get your attention." *Id.* at 61:1–3. Keifer stated that she had sent Reed out "to investigate" because of complaints from the public. Tab 5, Hr'g Tr. at 39:4,11. She further testified that at the time Reed issued the stop work order "it wasn't clear if construction was being done" and that the order addressed only the lack of a sign permit, not the lack of a building permit. Tab 5, Hr'g Tr. at 46:1.

Bouzaglo's opinion that Kent County law was overly restrictive and vague but offering to remove any item the Department deemed objectionable.[3]

On June 26, 2020, Reed returned to the store and took pictures of the merchandise.[4] Reed did not determine whether Go4Play's operation constituted an adult entertainment establishment pursuant to the Ordinance.[5] That determination was apparently made later by upper-level Department staff and County leadership, as will be discussed *infra*. Shortly after the stop work order was issued, Bouzaglo met with Department Director Sarah Keifer, who informed him, "the County Administrator, it's in his hands, you stepped on the wrong foot . . . "[6] and "even if [Bouzaglo sold] one sex toy, [Go4Play's business would be] considered an adult store."[7]

According to Keifer, the determination that Go4Play's business was an adult entertainment establishment was made some time before June 19, 2020. The Department staff came to the "conclusion that it met the definition. [Keifer] took that to leadership."[8] The decision was "actually discussed among leadership of Kent County, which would be the President of Levy Court, the Vice President of Levy Court, as well as the County Administrator. And [Keifer] was part of the conversation, as well."[9] The conclusion of the conversation was that Go4Play's business "met the definition . . . of an Adult Entertainment Establishment."[10]

---

[3] Tab 14, Notice of Decision, final page (unnumbered).
[4] Tab 5, Hr'g Tr. at 14:8–11.
[5] Tab 5, Hr'g Tr. at 15: 3–14.
[6] Tab 5, Hr'g Tr. at 61:23–24. *See also id.* at 64:18–22 ("Again, they said that I stepped on the wrong foot, on really heavy foot of the man upstairs, and they are going to do anything they can to shut me down, and they said because of the name of your store.").
[7] Tab 5, Hr'g Tr. at 78:3–5.
[8] Tab 5, Hr'g Tr. at 46:18–21.
[9] Tab 5, Hr'g Tr. at 40:3–8.
[10] Tab 5, Hr'g Tr. at 40:11–13.

On August 25, 2020, Go4Play appealed the Department's decision to the Board and sent a letter outlining reasons that it should not be considered an adult entertainment establishment, including the contention that the Ordinance "suffer[s] from significant constitutional infirmities, in that the Code provisions in question are impermissibly vague, ambiguous, and overbroad—and therefore—unenforceable."[11]  On November 19, 2020,  Keifer sent a memorandum to the Board memorializing the finding of the Department.[12]

A hearing on the appeal was held before the Board on November 19, 2020. The Board heard testimony from Reed, Bouzaglo, and Keifer.  Keifer testified to the Department's memorandum and reiterated the Department's position that the definition of "adult entertainment establishment" applies to establishments that sell devices "used for" various sexually related activities, *i.e.* "sexual stimulation, masturbation, intercourse, sodomy or sadism," but she acknowledged that the phrase "used for" is not found in the Ordinance.[13]   Near the end of the hearing the Board heard unsworn[14] testimony from the Mayor of the Town of Cheswold and a few of its residents.[15]   Those testifying stated that they found Go4Play's sign and business name (*i.e.*, "Bendover") objectionable, but they also agreed that there was no evidence of secondary effects such as crime or prostitution.  One resident mentioned the possibility that the value of his house could be adversely affected, but he provided no support for this.[16]

---

[11]  Tab 3, November 19, 2020 Memorandum & Enclosures at 16.
[12]  Tab 3, November 19, 2020 Memorandum & Enclosures at 1–3.
[13]  Tab 5, Hr'g Tr. at 47–49: Tab 3, November 19, 2020 Memorandum & Enclosures at 2 ("More specifically the items shown in Exhibits C,D,E,G, H, I, J, K, L and N are sexually-oriented devices used for sexual stimulation, masturbation, intercourse, sodomy, and or sadism.").
[14]  Tab 5, Hr'g Tr. at 91:20–22.
[15]  Tab 5, Hr'g Tr. at 91:24–98:11.
[16]  Tab 5, Hr'g Tr. 97:7–12.

At no time during the hearing was any evidence presented of adverse secondary effects produced by Go4Play's business.[17]   Moreover, as mentioned *supra*, complaints raised at the hearing focused primarily on the exterior of the building (*i.e.*, on the sign and the business name) rather than on the content of the building.[18]

At the conclusion of the hearing, the Board voted 5-2 to affirm the Department's determination that Go4Play's business constituted an adult entertainment establishment as defined by the Ordinance, and that Go4Play was therefore required to seek conditional use approval from the Levy Court to conduct its business.[19]   Go4Play appealed that decision to this Court on January 20, 2021. The Court heard oral argument on March 18, 2022.   The Court has reviewed the full record below, as well as all subsequent briefings and the transcript of the oral argument, and this appeal is ripe for decision.

## II. STANDARD OF REVIEW

On appeals from the Kent County Board of Adjustment, the Court limits its scope of review "[t]o a determination of whether the Board's decision is free from legal errors and whether the Board's finding [sic] of facts and conclusions of law are

---

[17] *See* Tab 5, Hr'g Tr. 69:7–70:1 (Bouzaglo's uncontroverted testimony that there had been no complaints regarding crime, prostitution, or sexual activity, or regarding sexually-oriented materials, used prophylactics, or drug paraphernalia, either outside the business location or on neighboring properties).

[18] This proposition was mentioned several times during the hearing, but most astutely by Board Member Brauncy Jenkins: "I'm . . . concerned that the complaints seem to have been generated by the physical building and not the content. . . . [a]nd the physical building may be suggestive in nature, but it seemed like most of the testimony was about the exterior and not the content." Tab 5, Hr'g Tr. at 141:19–21,142:3–6.

[19] Tab 14, Notice of Decision at 22–23.

supported by substantial evidence in the record."[20] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] The Board must "particularize its findings of fact and conclusions of law to enable the . . . Court to perform its function of appellate review."[22]

After reviewing the Board's decision, the Court "may reverse or affirm, wholly or partly, or may modify the decision" of the Board.[23] The Court "cannot remand a case to the Board, upon appeal, for the purpose of making specific factual findings, or for conducting further hearing or evidence taking."[24] However, the Court may hear additional evidence "so that a just decision may be reached, thus providing the finality desired."[25] Questions of law are reviewed *de novo*.[26]

## III. DISCUSSION

At the outset, the Court acknowledges that it "is the settled policy of [Delaware courts] that a constitutional question will not be decided unless its

---

[20] *Pizzadili Partners, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *3 (Del. Super. Aug. 26, 2016), *aff'd sub nom. LTR Properties, LLC v. Pizzadili Partners, LLC,* 157 A.3d 757 (Del. 2017) (TABLE).

[21] *McKinney v. Kent Cnty. Bd. of Adjustment*, 2002 WL 1978936, at *4 (Del. Super. July 31, 2002) (quoting *Wadkins v. Kent Cnty. Bd. of Adjustment*, 1999 WL 167776, at *2 (Del. Super. Feb. 23, 1999)).

[22] *Pizzadili Partners,* 2016 WL 4502005, at *3 (quoting *Gilman v. Kent Cnty. Dep't of Plan.*, 2000 WL 305341, at *4 (Del. Super. Jan. 28, 2000)).

[23] 9 *Del. C.* § 4918(f).

[24] *Mellow v. Bd. of Adjustment of New Castle Cnty.*, 565 A.2d 947, 950 (Del. Super. 1988), *aff'd sub nom. Mellow v. Bd. of Adjustment of New Castle Cnty.,* 567 A.2d 422 (Del. 1989) (TABLE) (citing *Auditorium, Inc. v. Bd. of Adjustment*, 91 A.2d 528 at 532 (Del. 1952)).

[25] *Id.* at 953. *See* 9 *Del. C.* § 4918(e) ("If, upon the hearing, it shall appear to the Court that testimony is necessary for the proper disposition of the matter, it may take evidence, or appoint a referee to take such evidence as it may direct and report the same to the Court with the referee's findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the Court shall be made.").

[26] *Pizzadili Partners*, 2016 WL 4502005, at *3 (citing *Freeman v. X-Ray Associates, P.A.*, 3 A.3d 224, 227 (Del. 2010)).

determination is essential to the disposition of the case."[27]  After a careful review of the briefings and record, this Court deems the constitutional questions raised at every stage of this enforcement action by Go4Play "essential" to this case's disposition.[28]  Specifically, the Court finds that the Board committed reversible legal error when it rejected Go4Play's argument [29] that the Ordinance is

---

[27] *Downs v. Jacobs*, 272 A.2d 706, 708 (Del. 1970) (citations omitted).

[28] As to Go4Play's other legal arguments, the Court finds that none are dispositive.

First, the Court does not find that the Department's failure to take enforcement action against the business known as "Desires," coupled with the subsequent enforcement action against Go4Play, was arbitrary and capricious and therefore estops the Department from enforcing the Ordinance.  Pet'rs' Opening Br. at 29.  After being made aware of Desires's merchandise, the Department cited the store for violating its certificate of use permit. Tab 5, Hr'g Tr. 40:18–41:15, 102:18–19.  There is no evidence in the record that the Department ignored its own precedent, as it was clearly not aware of the type and nature of novelties sold by Desires.  The Department explained that its enforcement process is complaint-driven, thus supporting the conclusion that the lack of prior enforcement against Desires was not arbitrary or capricious.  The Court finds no evidence that this was an action of selective enforcement, or that it shocks the conscience to such a degree that the Department  is estopped from enforcing the Ordinance against Go4Play.  *See County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000)) (holding that "non-legislative state action violates substantive due process if 'arbitrary, irrational, or tainted by improper motive,' or if 'so egregious that it "shocks the conscience""'").

Second, the Board's Decision did not violate the open meetings requirement of the Freedom of Information Act (hereinafter "FOIA") codified in 29 *Del. C.* § 10004.  There were no votes cast or exchanged during the email exchange.  The members, for the most part, affirmed what they had already stated in the public hearing with the parties present, and the emails show no active exchange of ideas. *See* Tab 9, Email Correspondence.  Therefore, the email exchange was not a means of circumventing FOIA. *See Op. Att'y Gen. 10-IB17*, 2010 WL 5186152 (Del. A.G. Dec. 15, 2010) (holding that emails exchanged between members of the Smyrna Town Council in which a quorum of the council discussed a matter before that body were not in violation of FOIA, as there was no "active exchange of ideas," even though each member was informally polled on his or her position).  *See also  Tyron v. Brandywine Sch. Dist. Bd. of Educ.*, 1990 WL 51719, at *3 (Del. Ch. Apr. 20, 1990) (finding that phone calls to various board members to "gain a general sense of the Board's position" did not violate FOIA).  The Board did convene on January 21, 2021, and the members were asked to "simply move the approval of the decision" and sign their names. Tab 12, Tr. of Jan. 21, 2021, Bd. Meeting.

Go4Play's other arguments, listed at Petitioners' Opening Brief at 18, are commingled with its constitutional claims, and the Court cannot parse them out without considering the constitutional issues.

[29] Tab 5, Hr'g Tr. at 10:22–11:5.

unconstitutional due to vagueness and overbreadth. In addition, the Court finds that there is no limiting construction available that could save the Ordinance.

## A. The Ordinance is Facially Vague.

The Ordinance reads as follows:

> § 205-6 ADULT ENTERTAINMENT ESTABLISHMENT
> A. Any establishment or portion thereof which offers sexually-oriented material, devices, paraphernalia, services or performances, or any combination thereof, or in any other form, whether printed, filmed, recorded or live; and which excludes admission or participation in any manner by persons under the age of 18.
> B. Furthermore, the term "sexually-oriented" shall be interpreted in the context of the following specified sexual activities and anatomical areas:
>> (1) Genitals in a state of sexual stimulation or arousal;
>> (2) Acts of human masturbation, sexual intercourse, sodomy, sadism, masochism or bestiality;
>> (3) Fondling or other erotic touching of human genitals, pubic region, buttocks or female breasts;
>> (4) Less than completely or opaquely covered human genitals, pubic region, buttock, female breasts below a point immediately above the top of the areola; and
>> (5) Human male genitals in a discernibly turgid state even if completely and opaquely covered.

A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated behavior is forbidden by the statute, or if it encourages arbitrary or erratic enforcement.[30] When First Amendment issues are not implicated, "the litigant must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of its

---

[30] *State v. Baker*, 720 A.2d 1139, 1147 (Del. 1998) (quoting *Sanders v. State*, 585 A.2d 117, 127 (Del. 1990)).

potentially vague application to others."[31]  However, when a First Amendment issue exists, "the Court must review the statute on its face to determine whether the vagueness itself will dissuade persons from constitutionally protected conduct."[32]

In viewing these challenges, "[t]he most important aspect is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern . . . enforcement."[33] "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."[34] It is "necessary" for an ordinance or statute to contain "minimal guidelines for enforcement . . . to prevent a 'standardless sweep' that allows for the pursuit of 'personal predilections.'"[35]

One of the hallmarks of facially vague statutes is their allowance of arbitrary enforcement.  This constitutional concern is typically subdued or inhibited by a limiting principle or standard by which the enforcement can be guided.  For ordinances that regulate adult establishments that are strictly retail-oriented, *i.e.*, that do not offer merchandise or entertainment for on-premises viewing, federal courts have uniformly found the phrase "significant" or "substantial," as qualifying the amount of revenue or stock of merchandise in an establishment, to be constitutionally acceptable.[36]

---

[31] *In re Hanks*, 553 A.2d 1171, 1176 (Del. 1989) (quoting *Aiello v. City of Wilmington, Del.*, 623 F.2d 845, 850 (3d Cir. 1980)).

[32] *State v. Gen. Chem. Corp.*, 559 A.2d 292, 295 (Del. Super. 1988).

[33] *Baker,* 720 A.2d at 1148 (quoting *Kolender v. Lawson,* 461 U.S. 352, 357–58 (1983)).

[34] *Id.* (quoting *Kolender,* 461 U.S. at 358 n.7).

[35] *Id.* (quoting *Robinson v. State,* 600 A.2d 356, 365 (Del. 1991)).

[36] *See, e.g.*, *Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) (noting that "significant or substantial" language gives the officials a standard that "satisfies this court that such a risk is not present to such a degree as to justify facial invalidation"); *World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1198–99 (9th Cir. 2004) ("Cases directly

The State of Delaware has such a limiting standard in its adult entertainment establishment statute, providing that "[a]dult-oriented retail establishment" shall mean "any commercial establishment, business or service, or portion thereof, which offers as **a substantial portion** of their [sic] business sexually-oriented material, devices, or paraphernalia, **but does not allow on-site displays of sexually-oriented materials or sexual activities.**"[37]   During the hearing held before the Board, the Department acknowledged that the Ordinance is more restrictive than the Delaware statute.[38]

In addition to the absence of a quantity requirement, which would restrict the size of the figurative "net," even more telling in this case is the Board members' obvious difficulty grasping the meaning of the Ordinance. Federal courts have deemed statutes void on their face when those that are asked to enforce a statute cannot determine its meaning.[39] The following excerpts illustrate this concern:

---

addressing the phrase 'significant or substantial' in this context have upheld its validity. Moreover, this phrase is readily susceptible to a narrowing construction." (citations omitted)); *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 996–97 (7th Cir. 2002) (upholding definitions of "'Adult Bookstore,' 'Adult Novelty Store,' and 'Adult Video Store' as commercial establishments that, *inter alia*, 'derive [ ] a significant or substantial portion or [sic] [their] revenues' from Media *characterized by* the depiction or description of' nudity or sexual activities." (alterations in original)); *ILQ Investments, Inc. v. City of Rochester,* 25 F.3d 1413, 1419 (8th Cir. 1994) (holding that ordinance was not "devoid of meaningful legislative standards" where it employed phrase "substantial portion").

[37] 24 *Del.C.* § 1602(3) (emphasis supplied).  The statute goes on to define "[s]exually oriented material" as "[a]ny book, article, magazine, publication or written matter of any kind, drawing, etching, painting, photograph, motion picture film or sound recording, which depicts sexual activity, actual or simulated, involving human beings or human beings and animals, or which exhibits uncovered human genitals or pubic region in a lewd or lascivious manner or which exhibits human male genitals in a discernibly turgid state, even if completely covered." *Id.* at 1602(18).

[38] Tab 5, Hr'g Tr. at 48:3–12, 70:11-24.

[39] *See, e.g.*, *Ellwest Stereo Theater, Inc. v. Boner*, 718 F.Supp. 1553, 1581 (M.D. Tenn. 1989) (holding an ordinance unconstitutionally vague "when the regulating authority cannot determine the establishments which are subject to its authority"); *City of Knoxville v. Entm't. Res., LLC*, 166 S.W.3d 650, 656–57 (Tenn. 2005) (holding an ordinance unconstitutionally vague when "the

1) **Board Member Temple Carter**: [I'm] going to vote yes. Um, however, I think that the thing is very ambiguous. I'm not sure that this Board is going to find the right answer. . . .

**Mr. Townsend**: Can we get – can we offer a little bit more support than that for our—

**[Mr.] Carter**: I just think that the entire—that entire section is very ambiguous. I think the code people did what they thought was correct. So, you know, based on that, that the County made the right decision, although I think there is [sic] a lot of questions to be answered.[40]

2) **Board Member Eric Crossan**: [T]here again, in reading the code, maybe I'm interpreting it differently, but I'm reading where sexually oriented materials, comma, devices, comma, paraphernalia are three different things . . . [41]

3) **Board Member Brauncy Jenkins**: I know that I am picking at a gnat, but it just seems like the language is vague in some instances to me, and it's difficult to grasp. I mean, it was presented well, but the way the language is has something to be desired. . . . I vote no on appeal on A-20-38 based upon the ambiguity of the definition. And based on that, that's my decision. [42]

Even more revealing of the Ordinance's facially vague quality were Department counsel's various statements regarding the Ordinance. The most troubling of these statements occurred when the Board's counsel was trying to get the Department's counsel to explain what the phrase "in the context of" means in order to provide the Board some clarification regarding the Ordinance's meaning. The Department's counsel replied,

"In the context of?" I have never seen that. I was a lawyer for the House of Representatives in Delaware for years. We didn't draw it

officers charged with enforcing the ordinance [are unable] to define its key terms").
[40] Tab 5, Hr'g Tr. at 150:19–151:12.
[41] Tab 5, Hr'g Tr. at 152:12–17.
[42] Tab 5, Hr'g Tr. at 130:9–12, 154:4–7.

like that. I'm not being critical really, **because one of the beauties of this is you could never credibly say that what it spells out** . . . . You know, how do A and B intersect? I can't give you a precise answer . . . .[43]

If the "beauty" of the Ordinance derives from the fact that no one "could [ever] credibly say" what the Ordinance means, then in essence, the enforcers of the Ordinance can apply it to any establishment that falls within their subjectively determined meaning of the Ordinance. Neither Department counsel nor the Board could grasp the meaning of the Ordinance. Near the end of the hearing, one Board member who voted "yes" instructed fellow Board members that "[i]f there is any doubt to me that this is an appropriate use, I think we need to kind of err on the side of caution, let them go through a conditional use process."[44] This kind of thinking both casts too wide a net and exemplifies a misunderstanding of the County's burden in showing it has a substantial interest in regulating such expression.

The Supreme Court of the United States has stated that when a vague ordinance "abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider under the unlawful zone than if the boundaries of the forbidden areas were clearly marked."[45] If the Board, which is tasked with being the first avenue of affirmation of an enforcement action, cannot understand the Ordinance clearly, and the counsel who represents the enforcement agency cannot do the same, then the Ordinance is vague on its face. For the reasons stated, the

---

[43] Tab 5, Hr'g Tr. at 108:10–17, 108:19–21.

[44] Tab 5, Hr'g Tr. at 137:7–11. To Board counsel's credit, following this statement, he "caution[ed] the group against presuming that you have a duty to be cautious . . . and translating that into affirming the decision . . . ." *Id.* at 138:1–4.

[45] *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972) (internal quotations and citations omitted).

Court finds the Ordinance to be facially vague.

## B. The Ordinance is Unconstitutionally Overbroad.

"Vagueness is a concept that is so closely related to the issue of overbreadth that the two are very often used interchangeably."[46] A statute is unconstitutionally overbroad if it "does not aim specifically at evils within the allowable area of government control, but sweeps within its ambit other activities that constitute an exercise of protected expressive or associational rights."[47] As with facial vagueness challenges, the Court "must consider not only conduct clearly prohibited by the regulation but also conduct that arguably falls within its ambiguous sweep."[48] Thus, this analysis is similar to the one *supra*.

In *United Video Concepts, Inc. v. City of Dover*, this Court considered an overbreadth challenge to a municipal ordinance nearly identical to the Ordinance.[49] As the Board concedes on appeal, during the hearing before the Board the Department and Go4Play "essentially stipulated that the Court in *United Video* was interpreting a municipal statute for our purposes identical to [the Ordinance]."[50] The only difference appears to be the Ordinance's restriction of eighteen-year-olds from either "admittance or participation"—a distinction that counsel for the Board conceded at oral argument to be "superficial."[51] Thus, this Court's finding that Dover's mirror-image ordinance was overbroad carries great weight in the current analysis. As the Court then observed, the Dover ordinance applied

---

[46] *United Video Concepts, Inc. v. City of Dover*, 1994 WL 682321, at *3 (Del. Super. Oct. 31, 1994), *aff'd*, 660 A.2d 396 (Del. 1995) (TABLE).
[47] *Taylor v. State*, 76 A.3d 791, 799 (Del. 2013).
[48] *Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006).
[49] *See United Video*, 1994 WL 682321, at *1-*2 (text of ordinance in question).
[50] Board's Answering Br. at 14.
[51] Oral Arg. Tr. at 40:13–17, 51:2–3.

not only [to] an 'establishment', but also any 'portion thereof.' The choice of 'establishment' and 'offers' instead of 'commercial establishment' and 'offers for sale' further appears to extend the reach of the ordinance. Such broad terms could literally encompass not only corner newsstands, but in addition such institutions as public libraries, movie theaters that run R-rated movies, and hotels with pay per view channels in hotel room televisions.[52]

At the Board hearing, the Department's counsel appeared to concede that many of the concerns of this Court noted in *United Video* are applicable to the Ordinance when he stated,

> Personally, I think it should be amended just to make sure libraries, Pay Per View hotel rooms—um what was my other example—movie theaters could never fall under the umbrella of the ordinance. . . . [I]t can be made better for those it is not intended to ensnare in the first place. That's my point. And that was Judge Ridgely's point.[53]

The Department's counsel appeared to argue that where an individual or entity challenges an ordinance on First Amendment overbreadth grounds, the challenge cannot succeed if the challenger's activities fall within the ordinance's intended reach, even if other individuals and entities are unintentionally brought within the ordinance's reach due to its overbreadth.[54] This evinces a basic misunderstanding of the concept of overbreadth. As this Court explained in *United Video*,

> A party may bring a claim of overbreadth **even if the activity engaged in by the party is within the allowable area of control**. Standing is retained by this type of party **if it can show that as to other individuals not before the court**, the allegedly overbroad statute or ordinance 1) is overbroad in a real and substantial manner, and 2) no limiting construction is possible. If such a showing can be sustained, the statute

---

[52] *United Video*, 1994 WL 682321, at *3.
[53] Tab 5, Hr'g Tr. at 101:9–13, 107:17–20.
[54] *See* Tab 5, Hr'g Tr. at 100:3–101:8.

or ordinance will be invalidated.[55]

The other issue, not noted in *United Video* but clear to this Court, is that the Ordinance lumps every type of adult entertainment establishment into one all-encompassing definition without delineating between the different types.[56] Go4Play recognized this below, stating that the Ordinance appeared to be a "mish-mash" of portions of the Delaware Code, *i.e.*, by addressing only "adult entertainment establishments" in forming its definition without distinguishing "adult-oriented retail establishments."[57] In other words, the "in the context of" portion of the Ordinance contains a list of "specified sexual activities and anatomical areas" that is nearly identical to the definition of "[s]pecific sexual activities" in the Delaware statute.[58] However, in the Delaware statutory scheme, on-site displays of "[s]pecific sexual activites" are associated only with "[a]dult entertainment establishments," while "adult-oriented retail establishments" "do[ ] not allow on-site displays of . . . sexual activities."[59] This may help explain some Board members' difficulty with applying the Ordinance's definition of "specified sexual activities and anatomical areas" to Go4Play's business activities.

This Court takes judicial notice of Delaware's counterpart statute, which clearly defines the separate types of adult establishments and under which Go4Play's business would not even fall into the definition of "adult entertainment

---

[55] *United Video*, 1994 WL 682321, at *2 (emphasis supplied).
[56] *Cf. Purple Onion, Inc. v. Jackson*, 511 F. Supp. 1207, 1221 (N.D. Ga. 1981) (evaluating regulations that dealt with adult-oriented retail establishments and that did separate the definitions for different types but noting that their "substantially overbroad [nature] is borne out by the great overlap among the three definitions").
[57] Tab 5, Hr'g Tr. at 72:1–7.
[58] *Compare* Section 205-6 *with* 24 *Del.C.* § 1602(19).
[59] 24 *Del.C.* § 1602(2) and (3).

establishment,"[60] and Dover's ordinance from *United Video*, as it appears to have been amended to clarify the different types of establishments the ordinance covers.[61] As mentioned *supra¸* federal courts have consistently held that an ordinance that deals with retail sales requires some limiting principle for adult-oriented retail establishments that sell or rent goods rather than entertain through live or recorded performances.   Thus, a bookstore that sells one adult book or a video store that rents one X-rated video would both fall into the Ordinance's "net," even though the Delaware Supreme Court has noted that a video store that rents explicit videos for off-site use does not give rise to secondary effects such as prostitution and criminal obscenity.[62]   Moreover, as Department's Counsel mentioned, there are several other businesses that fall within the Ordinance that cannot be said to create the secondary effects, as discussed *infra*, that the Levy Court sought to regulate.[63]   For these reasons, the Court finds that the overbreadth of the Ordinance is substantial and

---

[60] 24 *Del.C.* § 1602(2). In addition, Go4Play proffered that its business does not fall within the Delaware Code's definition of adult-oriented retail establishment. Tab 5, Hr'g Tr. at 62:18–63:1.

[61] Code of Ordinances, City of Dover, Appendix B - Zoning, Art. 12. Definitions: *Adult entertainment establishment* (available at cityofdover.com) ("[T]he term 'adult entertainment establishment' shall encompass, but shall not be limited to, what is commonly known as 'massage parlors,' 'adult bookstores' and 'adult entertainment centers.'").

[62] *Richardson v. Wile*, 535 A.2d 1346, 1350 ( Del. 1988)).

[63] The Ordinance's provision limiting applicability to those establishments excluding admission or participation by individuals under 18 does not significantly restrict the "net" for overbreadth purposes, because presumably, for most of those establishments noted by the Department's counsel, *see supra* note 53,  "participation" or "admittance" by those under eighteen could or would be restricted. *See Wreal, LLC v. Amazon.com, Inc.*, 2015 WL 12550912, at *5 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016) (indicating that pay per view or adult themed channels normally require consumers to "verify that they are over eighteen years old and are willing to view adult content"); *Mississippi Emp. Sec. Comm'n v. Harris*, 672 So. 2d 739, 741–42 (Miss. 1996) ("Anyone born in this century and living on this planet should know the 'R' movie rule, which is 'no one under 17 admitted unless a parent accompanies them into the movie.' This rule means parents must give permission for their children to view an "R" rated film."); *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 199, 214 (2003) (plurality opinion) (allowing a library to limit access to pornographic or obscene sites to "prevent minors from obtaining access to material that is harmful to them" while "unblock[ing] filtered material" for adults who request it).

16

real.[64]   The Ordinance is both facially vague and overbroad.

## C. No Limiting Construction of the Ordinance Is Possible.

This Court has been instructed by the Delaware Supreme Court that "[w]here a possible infringement of a constitutional guarantee exists, the interpreting court should strive to construe the legislative intent so as to avoid unnecessary constitutional infirmities"[65]   and that "[e]ven an incidental impact requires that the statute be narrowly interpreted so that its effect on first amendment freedoms is no greater than is essential to serve a substantial governmental interest."[66]   Under both doctrines—*i.e.*, vagueness and overbreadth—the Ordinance can be saved as long as a limiting construction is possible.

In *Richardson* v. *Wile*, the Delaware Supreme Court noted that establishments promoting *on-site* displays of activities that the ordinance sought to regulate would be "likely to promote crimes of obscenity and prostitution," in contrast to establishments offering items for off-premises use—*i.e.*, adult-oriented retail establishments.[67] In that case, the Supreme Court declined to read into the statutory provision in question—24 *Del.C.* § 1602(2)—language limiting the statutory provision's reach to those businesses offering explicit material as a "substantial portion" of their business, as desired by the municipality, and stated that

---

[64] To this point, during the hearing the Board's counsel responded as follows to Department counsel's argument that the language of the Ordinance could be "improved":   "You mentioned that the definition could be improved.   But you don't mean to suggest that this group can improve that definition tonight?"   The Department's counsel replied, "No.   No.   That would have to be a text amendment.   You know, it would start in the planning staff and work its way through the [Regional Planning Commission] and then to the Levy Court."   Tab 5, Hr'g Tr. 107:7–16.
[65] *Baker*, 720 A.2d at 1144 (citing *Richardson*, 535 A.2d at 1350).
[66] *Richardson*, 535 A.2d at 1350 (citations omitted).
[67] *Id.* at 1350.

"[t]o supply an enforceability standard where one does not exist suggests an awareness or understanding of what threshold the General Assembly would have imposed had it considered the question. We are not inclined to engage in this exercise in judicial legislation."[68]

Moreover, the *Richardson* Court, in discerning the "governmental interest" being served, had the benefit of an explicit statement of purpose, *i.e.*, 24 *Del.C.* § 1601, which provided that the purpose of Delaware's Adult Entertainment Act was to reduce and prevent the crimes of obscenity and prostitution. The drafters of the Ordinance, by contrast, provided no such specific statement of purpose, but rather only a general intent to benefit County residents, including their "health, safety, morals, . . . and general welfare . . . ."[69] This in itself renders the task of seeking an appropriate limiting construction more problematic, as it increases the difficulty of discerning the intent of the Levy Court in regulating adult entertainment and other adult-oriented businesses. While a general intent to promote the welfare of County

---

[68] *Id.* at 1351.

[69] *Compare* § 205-3 Purpose ("The purpose of this chapter is, pursuant to the authority granted in Article 2, Section 23 of the State Constitution of 1897; Title 9, Delaware Code, Chapter 49, Part III; and Title 9, Delaware Code, Chapter 49, Sub Chapter II, to promote the health, safety, morals, convenience, order, prosperity and general welfare of the County residents . . . to conserve and protect the value of property . . . .) *with* 24 *Del.C.* § 1601 ("It is the finding of the General Assembly that the health, safety and welfare of the people of the State are imperiled by the increasing incidence of the crimes of obscenity, prostitution and of offenses related thereto. The General Assembly finds that the foregoing crimes are principally facilitated by the widespread abuse of legitimate occupations and establishments, to wit, adult entertainment establishments. It is the further finding of the General Assembly that existing criminal penalties for the foregoing offenses have been rendered ineffective by the active concealment of the identities of the individuals who create, control and promote such businesses; by the failure of these individuals and businesses to exercise adequate control and supervision over the activities of their employees; and by the active promotion of prostitution and obscenity by these individuals and businesses for their own financial gain. It is the additional finding of the General Assembly that the health, safety and welfare of the people of the State are imperiled by the widespread operation of adult-oriented retail businesses without reasonable time, place and manner limitations on such businesses.").

residents could be broadly viewed as including the goal of preventing secondary effects such as obscenity and prostitution, formally reading that intent into the Ordinance would also, in the words of the *Richardson* Court, constitute "judicial legislation."

As with the statute under consideration in *Richardson*, the issue with the Ordinance is that there is no delineation among different types of adult entertainment establishments, and no limiting principle that would guide enforcement in the context of retail establishments selling merchandise intended for off-site use. Rather, the Ordinance casts the widest net possible and appears to include every form of establishment under the term "entertainment." *Richardson* stands for the proposition that an all-encompassing definition of an adult entertainment establishment cannot properly capture, or be enforced upon, establishments that sell adult-themed merchandise intended for off-premises use without an enforceability standard that limits its reach.[70]

Post-*Richardson,* the State of Delaware amended its statute to include a separate category for "[a]dult-oriented retail establishment[s]" and added the limiting or enforceability principle "substantial portion of their business."[71] This amendment aligns with a vast majority of statutes approved as constitutional by federal courts.[72] The Court will not speculate as to what threshold the Levy Court feels is appropriate to apply to this type of establishment, which deals solely with adult-themed merchandise sold for off-premises use. The purpose section applicable to the Ordinance mentions nothing about secondary effects of adult businesses, and the Court cannot write in a limiting principle when there is no

---

[70] *Richardson*, 535 A.2d at 1350.
[71] 24 *Del. C.* § 1602(3).
[72] *See supra* note 36.

specific legislative intent or evidence of secondary effects to guide its hand.

Accordingly, the Court has no avenue to limit the Ordinance.[73]

## IV. CONCLUSION

The Board committed legal error when it failed to recognize the constitutional infirmities associated with the Ordinance. After a *de novo* review of the legal issues inherent in this case, the Court finds that the Ordinance is both vague and overbroad, and that there is no limiting construction available that would save the Ordinance. Therefore, application of the Ordinance to Go4Play's business is unavailable, and the decision of the Board is **REVERSED**.

---

[73] The Court in *United Video* did apply a limiting construction by confining application of the Dover ordinance to "those adult entertainment establishments that research and experience has [sic] shown cause undesirable secondary effects of crime, prostitution and the problems associated with adult entertainment." 1994 WL 682321, at *4. In finding the Dover ordinance specifically applicable to the business in that case, however, the *United Video* Court noted that the record below was "replete with evidence that the appellant's store was, both under prior ownership and as operated by the appellant, a source of exactly the kind of undesirable secondary effects the ordinance was designed to avoid." *Id.* In this case, by contrast, there is no such evidence—in fact, all the evidence presented to the Board demonstrated that there are *no* such undesirable effects associated with Go4Play's business. Moreover, as noted *supra*, the *Richardson* Court held that a store renting explicit videos for off-site viewing does not produce the undesirable secondary effects commonly associated with establishments that promote on-site activities. *Richardson*, 535 A.2d at 1350.

Finally, while this Court in *United Video* looked for guidance to the United States Supreme Court decision in *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986), *United Video* was decided before the later Supreme Court decision in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) (plurality opinion), which "clarif[ied] the standard for determining whether an ordinance serves a substantial government interest under *Renton* . . . ." 535 U.S. at 433. As the Supreme Court explained in *Alameda Books*, in determining whether a statute or ordinance passes muster as an appropriate content-neutral time, place, and manner restriction, a court must conduct a burden-shifting inquiry in which the governmental entity first submits its rationale for the restriction, and those challenging the ordinance then have an opportunity to cast doubt on that rationale. *Id.* at 438-39. No such burden-shifting inquiry was conducted by the Board here.

**IT IS SO ORDERED.**

Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc:   Prothonotary
cc:   Counsel of Record

21