**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-23-0000006
17-SEP-2025
08:53 AM
Dkt. 20 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Petitioner/Plaintiff-Appellee,

vs.

JOSHUA MASUDA-MERCADO,
Respondent/Defendant-Appellant.

SCWC-23-0000006

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-23-0000006; CASE NO. 3CPC-20-0000731)

SEPTEMBER 17, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

This case concerns the relationship between a bill of particulars and jury instructions in a criminal proceeding. The specific impact of the filing of a bill of particulars on jury instructions in the same proceeding is a question of first impression before this court.

Respondent Joshua Masuda-Mercado was indicted on two counts for sexual acts involving a minor under the age of fourteen.  Prior to trial, the State filed a bill of particulars (the Bill) providing the specific acts the State was alleging to support the indictment, along with the statutory definitions of "sexual contact" and "sexual penetration."  At the close of trial, the Circuit Court of the Third Circuit (circuit court) instructed the jury with modified statutory definitions of "sexual penetration" and "sexual contact," omitting certain terms that were irrelevant to the evidence presented at trial.  The jury convicted Masuda-Mercado of Attempted Sexual Assault in the First Degree and Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.

Masuda-Mercado appealed his conviction, arguing that the definitions of "sexual penetration" and "sexual contact" provided in the jury instructions allowed the jury to convict him for conduct outside the specific acts included in the Bill.  The Intermediate Court of Appeals (ICA) agreed and vacated Masuda-Mercado's conviction.  The ICA concluded that the omission of the Bill's acts from the jury instructions may have erroneously contributed to Masuda-Mercado's conviction.

We hold that, while a bill of particulars may limit the evidence proffered at trial, it does not similarly bind what may be included in jury instructions.  We therefore conclude

2

that the omission of the specific acts outlined in the Bill in the circuit court's jury instructions was not erroneous. We further conclude that there is no reasonable possibility that any error in the instructions contributed to Masuda-Mercado's conviction. Accordingly, we reverse the ICA's October 11, 2024 Judgment on Appeal and affirm the circuit court's December 16, 2022 Judgment of Conviction and Sentence.

## II. BACKGROUND

### A. Circuit Court Proceedings[1]

On August 11, 2020, a grand jury indicted Masuda-Mercado on two counts: Sexual Assault in the First Degree, in violation of Hawaiʻi Revised Statutes (HRS) § 707-730(1)(b) (2014) (Count 1);[2] and Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, in violation of HRS § 707-733.6 (2014) (Count 2).[3] J.E., the complaining witness as to both

---

[1]     The Honorable Wendy M. DeWeese presided.

[2]     HRS § 707-730(1)(b) provides in relevant part, "A person commits the offense of sexual assault in the first degree if . . . [t]he person knowingly engages in <u>sexual penetration</u> with another person who is less than fourteen years old[.]" (Emphasis added.)

[3]     HRS § 707-733.6 provides in relevant part:

(1)   A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:

        (a)   Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and

(. . . continued)

counts, was a minor under the age of fourteen at the time of the alleged offenses.

Prior to trial and without request by Masuda-Mercado or order by the circuit court, the State filed the Bill, which included the statutory definitions of "sexual contact" and "sexual penetration" as provided in HRS § 707-700 (2014 & Supp. 2016).[4] The Bill also clarified the specific acts the State

---

    (b)    Engages in three or more acts of <u>sexual penetration</u> or <u>sexual contact</u> with the minor over a period of time, while the minor is under the age of fourteen years.

    (2)    To convict under this section, the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.

(Emphasis added.)

    [4]    HRS § 707-700, which defined terms for this chapter, provides in relevant part:

    "Sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of another, or of the sexual or other intimate parts of the actor by another, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

    "Sexual penetration" means:

    (1)    Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. As used in this definition, "genital opening" includes the anterior surface of the vulva or labia majora; or

(. . . continued)

alleged in support of each count of the indictment.  As to Count 1, the Bill alleged that on July 2, 2019, Masuda-Mercado "used his tongue and/or mouth to lick J.E.'s genitals; and/or [Masuda-Mercado] digitally penetrated J.E.'s genitals."  As to Count 2, the Bill alleged that "between November 1, 2014 and August 31, 2018," Masuda-Mercado "committed three or more acts of sexual penetration and/or sexual contact" by "using his tongue and/or mouth to lick and/or touch J.E.'s genitals; and/or touched and/or penetrated J.E.'s genitals with his penis and/or hand and/or an object."

Also prior to trial, the State requested a jury instruction on Count 1 that included the lesser included offenses of Attempted Sexual Assault in the First Degree, Sexual Assault in the Third Degree,[5] and Attempted Sexual Assault in the Third Degree.

At trial, J.E. testified that she first met Masuda-Mercado in 2012, when he became a tenant in one of the houses on

---

        (2)    Cunnilingus or anilingus, whether or not actual penetration has occurred.

For the purposes of this chapter, each act of sexual penetration shall constitute a separate offense.

[5]    HRS § 707-732(1)(b) (2014) provides in relevant part, "A person commits the offense of sexual assault in the third degree if . . . [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person."

her family's property in Kailua-Kona. J.E. was five years old at the time.

During the time Masuda-Mercado was a tenant on the property, J.E. and her younger brother would frequently visit Masuda-Mercado to play video games. One game console was located in the living room and another was located in Masuda-Mercado's bedroom. The siblings would often play from the separate rooms and, usually, no adults other than Masuda-Mercado were present.

J.E. testified that on several occasions, while she was in the house playing video games, Masuda-Mercado would touch her on the vagina. The touching occurred both over and under J.E.'s clothing. This began when J.E. was five years old and continued until she was at least eight. J.E. explained that Masuda-Mercado usually touched her with his hands but that on multiple occasions he had also used a vibrating sex toy, which he held against her vagina. She also testified that, on two occasions, Masuda-Mercado pushed her shorts aside, stuck his head between her legs, and licked her vagina with his tongue. J.E. further recounted at least one instance where Masuda-Mercado laid down on top of her in the bedroom and pushed his penis against her vagina through their clothing.

Masuda-Mercado moved off the property sometime in late 2017 or early 2018.  At that time, J.E. had never told anyone about the things that Masuda-Mercado had done to her.

J.E. testified that, on the evening of July 2, 2019, Masuda-Mercado returned to the property where J.E. and her family were still living.  J.E. was twelve at the time.  At some point in the evening, J.E. asked Masuda-Mercado if he could help her add more storage to her phone, at which point Masuda-Mercado entered J.E.'s bedroom.  J.E. provided the following account of what transpired once she was alone with Masuda-Mercado in her room:

> A.   He caressed my boob as he was trying to -- as we were looking at something.
>
> Q.   And --
>
> A.   I think that's it.
>
> Q.   Did he try to touch you anywhere else?
>
> A.   Yeah, he tried to touch me on my vagina again but, um, I kept trying to turn away.
>
> Q.   Did he actually ever touch you on the vagina that night?
>
> A.   I'm not sure.
>
> Q.   Were you -- what were you wearing if you remember?
>
> A.   My leotard and shorts over my leotard 'cause that's what I came home from gym in.
>
> Q.   Did he try to do anything else other than touch you?
>
> A.   I don't think so.
>
> Q.   Did he say anything to you?
>
> A.   Yes.

Q.    What did he say?

A.    I don't remember what he said though.

Q.    Did he say anything about your pants?

A.    Uh, yeah.  He, um, at one point threatened to pull it down in the middle of the night jokingly.

Q.    You say "jokingly."  How do you know he was joking?

A.    By the tone of his voice.

Q.    Did he try to?

A.    No.

J.E. further testified that immediately after Masuda-Mercado left her room, J.E. sent a message to her best friend about what Masuda-Mercado had done to her that evening.  At some point that same night, J.E.'s message to her best friend was forwarded to J.E.'s mother.  When approached by her mother, J.E. confirmed that what was in the message was true.  Eventually, but not immediately, J.E. disclosed all of the other things Masuda-Mercado had done to her in the past.

J.E.'s mother corroborated J.E.'s testimony, however, she testified, concerning the evening of July 2, 2019, "I don't recall [J.E.] saying [Masuda-Mercado] touched her breasts.  I recall her saying that she -- he had touched other areas of her."  J.E.'s mother confirmed that J.E. eventually told her about the other incidents, including that "[Masuda-Mercado] had licked her private areas[.]"

After the State rested its case, the defense moved for a judgment of acquittal as to both counts. As to Count 1, the defense asserted "that the witness had testified that there was only groping of her chest," which was insufficient to support a charge of Sexual Assault in the First Degree.

The circuit court granted Masuda-Mercado's motion of acquittal only as to the Count 1 offense of Sexual Assault in the First Degree. However, the circuit court ruled, over the defense's objection, that Count 1 would go to the jury on two lesser included offenses: Attempted Sexual Assault in the First Degree and Attempted Sexual Assault in the Third Degree.

The defense called only one witness, Masuda-Mercado's ex-girlfriend and former roommate, Angelica Soto, who testified that she lived with Masuda-Mercado from 2014 through 2018. Soto testified that she was aware of times during that period when Masuda-Mercado was alone in the house with the children. She also testified that when J.E.'s mother told her about what Masuda-Mercado had allegedly done to J.E., she did not believe her.

After the State and the defense had rested, the circuit court refused the jury instructions proposed by the parties in favor of its own modified instructions. The circuit court modified the statutory definition of "sexual penetration" for purposes of the instructions, striking the terms "anal

intercourse," "fellatio," "or anal," and "or analingus" because there was no evidence of that conduct adduced at trial. The circuit court further reasoned that the terms should be omitted because the Bill "appear[ed] to rely on the penetration and/or attempted penetration of the genital opening rather than the anus" or mouth.

The circuit court gave the instruction as drafted over the defense's objection that the term "deviate sexual intercourse" should also be struck from the definition of "sexual penetration" because the former term was "not clearly defined."

As to Count 1, the circuit court instructed the jury in relevant part:

> In Count 1 of the Indictment, you must consider whether or not the Defendant, Joshua Masuda-Mercado, committed the offense of Attempted Sexual Assault in the First Degree.
>
> A person commits the offense of Attempted Sexual Assault in the First Degree if he intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of Sexual Assault in the First Degree.
>
> There is one element of the offense of Attempted Sexual Assault in the First Degree, which the prosecution must prove beyond a reasonable doubt.
>
> This element is:
>
> 1.  The Defendant engaged in conduct which, under the circumstances as the Defendant believed them to be, was a substantial step in a course of conduct intended by the Defendant to culminate in the commission of Sexual Assault in the First Degree.

The State must also prove beyond a reasonable doubt:

2.      That the Defendant acted intentionally with respect to element 1 above; and

3.      That this occurred on or about July 2, 2019 in the County and State of Hawaiʻi.  The exact date is not required.

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Sexual Assault in the First Degree.  A person commits the offense of Sexual Assault in the First Degree if he knowingly engages in sexual penetration with a minor who is less than fourteen years old.

The law allows for the introduction of evidence for the purpose of showing that there is more than one act by the Defendant upon which proof of an element of an offense may be based.  In order for the prosecution to prove element 1 above, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt.

The Count 1 instructions also included an instruction on the lesser included offense of Attempted Sexual Assault in the Third Degree.  This instruction, which largely followed the previous instruction, similarly required the State to prove that "[t]he Defendant engaged in conduct which, under the circumstances as the Defendant believed them to be, was a substantial step in a course of conduct intended by the Defendant to culminate in the commission of Sexual Assault in the Third Degree, specifically, touching J.E.'s genitals."

As to Count 2, the circuit court instructed the jury in relevant part:

In Count 2 of the Indictment, the Defendant, Joshua Masuda-Mercado, is charged with the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.

11

A person commits the offense of Continuous Assault of a Minor Under the Age of Fourteen Years if the person either resides in the same home with or has recurring access to a minor, and engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time while the minor is under the age of fourteen years.

There are three elements of the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. The Defendant either resided in the same home with or had recurring access to J.E.; and

2. The Defendant engaged in three or more acts of sexual penetration or sexual contact with J.E.; and

3. That J.E. was under the age of fourteen years at the time each act occurred.

The State must also prove beyond a reasonable doubt:

4. That the Defendant acted intentionally or knowingly with respect to elements 1 and 2; and

5. That this occurred on or between November 1, 2014 through August 31, 2018, in the County and State of Hawaiʻi. The exact date is not required.

To convict the Defendant of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years you must unanimously agree only that the requisite number of acts have occurred. You do not have to unanimously agree on which acts constitute the requisite number of acts.

As to the relevant terms "sexual penetration" and "sexual contact," the instructions provided:

The following definitions apply to the jury instructions in this case:

"Sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

"Sexual penetration" means:

(1)   Vaginal intercourse, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital opening of another person's body; it occurs upon any penetration, however slight, but emission is not required.  "Genital opening" includes the anterior surface of the vulva or labia majora; or

(2)   Cunnilingus, whether or not actual penetration has occurred.

At the close of trial, the jury found Masuda-Mercado guilty of Attempted Sexual Assault in the First Degree on Count 1 and Continuous Sexual Assault of a Minor Under the Age of Fourteen Years on Count 2.  The circuit court sentenced Masuda-Mercado to serve two concurrent twenty-year terms of imprisonment.

## B.   Appellate Proceedings

Masuda-Mercado appealed his conviction, asserting that the jury instructions were erroneous as to both Counts 1 and 2.[6]

As to Count 1, Masuda-Mercado argued that the definition of "sexual penetration" provided in the instruction allowed the jury to convict him for conduct outside of the specific acts included in the Bill.  According to Masuda-Mercado, the jury should only have been able to convict him of

_____

[6]   Included in his second point of error, Masuda-Mercado also challenged the "non-unanimity" requirement of HRS § 707-733.6 as unconstitutional.  In order to convict under HRS § 707-733.6, the jury "need unanimously agree only that the requisite number of acts have occurred" and "need not agree on which acts constitute the requisite number."  Following briefing, and before the ICA issued its Summary Disposition Order in the present case, this court upheld the unanimity requirement in HRS § 707-733.6 as constitutional in State v. Tran, 154 Hawaiʻi 211, 549 P.3d 296 (2024).

Attempted Sexual Assault in the First Degree if it found beyond a reasonable doubt that he had attempted to "(a) lick or (b) digitally penetrate" [J.E.]'s genitals." Thus, he argued, the broader definition of "sexual penetration" amounted to a "violation of [his] due process rights to proof in conformity with the notice provided to him by the [Bill]."

As to the instruction on Count 2, Masuda-Mercado's arguments largely mirrored those he raised as to Count 1. Specifically, he argued that the included definitions of "sexual penetration" and "sexual contact" "expanded the number of acts" for which he could be convicted of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years and "violated the State's specification to prosecute only those [acts] specified in [the Bill]."

The State answered that the circuit court correctly instructed the jury as to the elements for Counts 1 and 2, and the instructions were therefore "not erroneous as a matter of law." Moreover, the State insisted that there was no real possibility that any alleged error in the instructions contributed to Masuda-Mercado's conviction. There was no variance between the Bill and the proof presented at trial, and any variance between the Bill and the language in the instructions was inconsequential.

The ICA vacated Masuda-Mercado's convictions and remanded his case for a new trial on the basis that the jury instructions given as to Count 1 and Count 2 were erroneous.

The ICA noted that the specific acts alleged in the Bill differed from the broader statutory definitions of "sexual penetration" and "sexual contact" provided in the jury instructions. Although the Bill included the statutory definitions of "sexual penetration" and "sexual contact," the ICA held that the circuit court erred when it included definitions of those terms in the jury instructions without also including the specific acts alleged in the Bill.

As to Count 1, the ICA noted that the circuit court's definition of "sexual penetration" included "deviate sexual intercourse," which is a term with its own statutory definition.[7] The ICA concluded that its inclusion was error, reasoning:

> When considering the modification of the charge, the breadth of testimony related to sexual acts occurring prior to Count 1's timeframe, the lack of specificity in the culminated offense, and the definitions provided, there was a reasonable possibility that omitting the Bill of Particulars Count 1 acts from the instructions while including a broadened definition of sexual penetration (i.e., deviate sexual intercourse) may have contributed to Masuda-Mercado's Count 1 conviction.

(Citation omitted.)

---

[7] HRS § 707-700 defines "deviate sexual intercourse" as "sexual gratification between a person and an animal or corpse, involving the sex organs of one and the mouth, anus, or sex organs of the other." It is uncontested that no evidence was adduced at trial suggesting that Masuda-Mercado engaged in "deviate sexual intercourse" within the meaning of the Hawaiʻi Penal Code.

Similarly, the ICA concluded that the circuit court's instruction as to Count 2, Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, was erroneous where "the instruction to the jury did not include the Bill of Particulars Count 2 acts."  The ICA took further issue with the "expansive definition of sexual contact" included in the jury instruction:

> When comparing the acts identified in the Bill of Particulars Count 2 and the definition of "sexual contact" in the instruction, the Bill of Particulars Count 2 limited sexual contact to the touching of complainant's genitals whereas the jury was instructed more expansively that "sexual contact" meant any touching of sexual or other intimate parts.
>
> Where some of the testimony referred to "privates" as opposed to "genitals," there was a reasonable possibility that omitting the specific acts in the Bill of Particulars Count 2 from the instruction while including the expansive definition of sexual contact may have contributed to Masuda-Mercado's Count 2 conviction.

The State sought certiorari review by this court, which we granted.

### III.   STANDARD OF REVIEW

> When jury instructions or the omissions thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.  Erroneous instructions are presumptively harmful and are ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  However, error is not to be viewed in isolation and considered purely in the abstract.  It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.  In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.  If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

16

State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006) (citation and brackets omitted) (emphases added).

## IV. DISCUSSION

The State presents two questions to this court:

1. Whether the ICA gravely erred in holding that the jury instructions for the included offense of Attempted Sexual Assault in the First Degree and Continuous Sexual Assault of a Minor Under the Age of Fourteen Years were erroneous as a matter of law because the instructions did not include the specific acts found in the Second Amended Bill of Particulars.

2. Whether the ICA gravely erred in holding that the errors in the jury instructions were not harmless beyond a reasonable doubt.

The State contends that the jury instructions were not prejudicially "insufficient, erroneous, inconsistent, or misleading just because they did not quote word-for-word the [Bill]." We agree. Accordingly, we conclude the ICA erred when it held that the jury instructions as to Counts 1 and 2 were prejudicially erroneous.

A bill of particulars provides a defendant with notice as to the specifics of the charges brought against him. This is distinct from the purpose of jury instructions, which is to inform the jury as to the applicable law. Although it would have been preferable for the circuit court to tailor its instructions to fit the specific conduct alleged in the Bill, the omission of those specific acts from the jury instructions here did not allow the jury to convict Masuda-Mercado for "other

17

conduct going beyond the [B]ill." Nor did it defeat the Bill's purpose.

The Bill limited the proof the State was allowed to present. Here, that was evidence that Masuda-Mercado "us[ed] his tongue and/or mouth to lick and/or touch J.E.'s genitals; and/or touched and/or penetrated J.E.'s genitals with his penis and/or hand and/or an object." Nothing in the evidence put on by the State pointed to conduct beyond what was alleged in the Bill. And there is no reasonable possibility that any other potential error in the instruction, be it the inclusion of the lesser included offenses or the provided definitions of "sexual penetration" and "sexual contact," could have contributed to Masuda-Mercado's convictions.

## A. Jury Instructions Are Not Required to Include the Specific Acts Outlined in a Bill of Particulars

A bill of particulars, a "formal, detailed statement of the claims or charges brought by a . . . prosecutor," serves a fundamentally different purpose than jury instructions. Bill of Particulars, Black's Law Dictionary (12th ed. 2024); see State v. Reed, 77 Hawaiʻi 72, 78, 881 P.2d 1218, 1224 (1994), overruled on other grounds by State v. Balanza, 83 Hawaiʻi 279, 1 P.3d 281 (2000). Much like an indictment, a bill of particulars provides notice and "is designed to enable the defendant to prepare for trial and prevent surprise." Reed, 77 Hawaiʻi at 78,

18

881 P.2d at 1224 (quotation marks and citation omitted); State v. Valenzona, 92 Hawaiʻi 449, 452, 992 P.2d 718, 721 (App. 1999) (noting the trial court had discretion to require a bill of particulars to inform the defendant of the specifics of the charge).  It also has a secondary function to permit defendants to plead double jeopardy in the event of a later prosecution for the same offense.  Reed, 77 Hawaiʻi at 78, 881 P.2d at 1224.

Bills of particulars are typically furnished upon request by the defendant or court order.  When a trial court "is of the opinion that the accused in any criminal case has been actually misled and prejudiced in the accused's defense" by the charging document, HRS § 806-47 (2014) permits the court to order the prosecution to file a bill of particulars on "matters in regard to which the court finds the defendant should be informed."[8]  Factual allegations contained in a bill of

_____

[8]     HRS § 806-47, "Bill of particulars," provides:

        If the court is of the opinion that the accused in any criminal case has been actually misled and prejudiced in the accused's defense upon the merits of any defect, imperfection, or omission in the indictment, insufficient to warrant the quashing of the indictment, or by any variance, not fatal, between the allegations and the proof, the prosecuting officer shall, when so ordered by the court, acting upon its own motion or upon motion of the prosecution or defendant, file in court and serve upon the defendant, upon such terms as the court imposes, a bill of particulars of the matters in regard to which the court finds that the defendant should be informed.

        In determining whether further information, and if so what information, is desirable for the defense of the accused upon the merits of the case, the court shall
                                              (. . . continued)

19

particulars "limit the government's case at trial in the same manner as factual allegations in an original charging instrument." Wayne R. LaFave, et al, 5 Criminal Procedure § 19.4(a) (4th ed. 2024).

Jury instructions, on the other hand, educate jurors about the law and their role and responsibilities throughout trial and deliberations. Tittle v. Hurlbutt, 53 Haw. 526, 530, 497 P.2d 1354, 1357 (1972) ("The function served by jury instructions is to inform the jury of the law applicable to the current case."). They are designed to "aid[] the jury in applying [applicable] law to the facts of the case." State v. Apao, 59 Haw. 625, 645, 586 P.2d 250, 263 (1978).

Although we have held that the "State is limited to proving the particulars specified in the bill" and that "[u]nimportant variances between the proof and a bill of particulars have been ignored," State v. Erickson, 60 Haw. 8, 9, 586 P.2d 1022, 1023 (1978), Hawaiʻi law is silent as to the effect of a bill of particulars on jury instructions.

Courts in other jurisdictions have noted the limited scope of a bill of particulars. E.g., Dzikowski v. State, 82 A.3d 851, 861 (Md. 2013) ("The bill of particulars functions as a limit on the factual scope of the charge, rather than its

consider the whole record of the case and the entire course of the proceedings against the accused.

legal scope."); State v. Sellards, 478 N.E.2d 781, 784 (Ohio 1985) ("A bill of particulars has a limited purpose—to elucidate or particularize the conduct of the accused alleged to constitute the charged offense.").

Other jurisdictions have also declined to require jury instructions to mirror exactly the facts alleged in a bill of particulars or other charging document. The Delaware Supreme Court rejected a defendant's argument that the trial court erred as a matter of law when it failed to instruct the jury on the specific alleged acts set forth in the bill of particulars. Robinson v. State, 600 A.2d 356, 361 (Del. 1991). The Delaware court emphasized the purpose of the bill to "apprise a defendant of what he may expect to meet at trial," and noted that the provided jury instruction included a definition of each of the statutory elements of the offense. Id. The Wyoming Supreme Court similarly declined to find error where the trial court rejected the defendant's proposed jury instructions that described "specific acts as they had been identified" by the charging documents. Brown v. State, 817 P.2d 429, 438 (Wyo. 1991). That court reasoned that the defendant's proposed instructions "would have circumscribed the fact finding process for the jury," and run contrary to the function of jury instructions, which is to "inform the jury about the applicable

21

law so that the jury may apply that law to its own findings with respect to material facts." Id. at 438-39.

Consistent with this persuasive authority, we hold the trial court is not required to instruct the jury in the exact words of the bill of particulars, provided the instruction is not inconsistent or misleading. This holding is consistent with our appellate review of jury instructions:

> Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.
>
> Nevertheless, the trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. If that standard is met, however, the fact that a particular instruction or isolated paragraph may be objectional, as inaccurate or misleading, will not constitute ground for reversal.

State v. Iuli, 101 Hawaiʻi 196, 203, 65 P.3d 143, 150 (2003) (citations, quotation marks, ellipses, and brackets omitted) (emphasis added).

Given the record in this case and the differing purposes between a bill of particulars (notice to the defendant) and jury instructions (educating the jury on the law that must be applied to the evidence presented), the omission of the particular conduct alleged in the Bill from the jury instructions was not "prejudicially insufficient, erroneous,

inconsistent, or misleading."  See State v. Kelekolio, 74 Haw.

479, 515, 849 P.2d 58, 74 (1993).

**B.    There Is No Reasonable Possibility that Any Error in the Instructions as to Count 1 Contributed to Masuda-Mercado's Conviction of Attempted Sexual Assault in the First Degree**

Examining the alleged error in the jury instruction as

to Count 1, the ICA concluded that "there was a reasonable

possibility that omitting the Bill of Particulars Count 1 acts

from the instructions while including a broadened definition of

sexual penetration (i.e., deviate sexual intercourse) may have

contributed to Masuda-Mercado's Count 1 conviction."

We disagree.  As noted above, any error in an

instruction "is not to be viewed in isolation and

considered purely in the abstract," but instead "must be

examined in the light of the entire proceedings and given

the effect which the whole record shows it to be entitled."

Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.  Reviewing the

record as a whole, there is no reasonable possibility that

any error in the instruction contributed to Masuda-

Mercado's Count 1 conviction of Attempted Sexual Assault in

the First Degree.

**1.    Modification of the charged offense**

As an initial matter, the "modification" from the

charge of Sexual Assault in the First Degree to the jury

instructions on Attempted Sexual Assault in the First and Third Degrees was not erroneous as a matter of law.

We have expressly recognized that Attempted Sexual Assault in the First Degree is an included offense of Sexual Assault in the First Degree.  State v. Bailey, 126 Hawaiʻi 383, 404, 271 P.3d 1142, 1163 (2012) (concluding there was a rational basis in the evidence for giving the lesser included offense instruction on Attempted Sexual Assault in the First Degree); see also HRS § 701-109(4)(b) (Supp. 2018) (permitting conviction of an included offense that "consists of an attempt to commit the offense charged").  Similarly, in State v. Malave, we held that "Sexual Assault 3 is an included offense of Sexual Assault 1 pursuant to HRS § 701-109(4)(c)."  146 Hawaiʻi 341, 352, 463 P.3d 998, 1009 (2020); see also HRS § 701-109(4)(c) (Supp. 2018) (permitting conviction of an included offense that "differs from the offense charged only in the respect that a less serious injury . . . suffices to establish its commission").

The presence of a bill of particulars does not change this analysis.  With a function similar to an indictment or other charging document, the bill of particulars, while limiting the State's case at trial, does not similarly limit instructions to the jury as to the applicable law.  See LaFave, et al., 5 Criminal Procedure § 19.4(a) ("The rules governing variance between proof and pleading apply to the bill of particulars just

24

as they do to an indictment or information."). It was therefore not "prejudicially insufficient, erroneous, inconsistent, or misleading" to instruct the jury as to Attempted Sexual Assault in the First and Third Degrees. See Kelekolio, 74 Haw. at 515, 849 P.2d at 74.

2. **"Testimony related to sexual acts occurring prior to Count 1's timeframe" and "lack of specificity in the culminated offense"**

Without specifying what testimony it relied upon or how the jury's consideration of that testimony would have prejudiced the Defendant, the ICA concluded that the "breadth of testimony related to sexual acts occurring prior to Count 1's timeframe" could have erroneously contributed to Masuda-Mercado's Count 1 conviction.

The charges as to Count 1 were temporally limited to the night of July 2, 2019. This was clearly laid out in both the Bill and the jury instructions.[9] Our court presumes "that jurors are reasonable and generally follow the instructions they are given." State v. Sing, 154 Hawaiʻi 377, 387, 550 P.3d 1235, 1245 (2024) (citation omitted). Thus, here, we presume that the jury understood that their determination as to the conduct elements of Count 1 was limited to the specific testimony

---

[9] Both the Bill and the jury instructions expressly stated that the offenses alleged in Count 1 occurred "on or about July 2, 2019."

25

presented as to Masuda-Mercado's actions on the night of July 2, 2019.

J.E.'s testimony, which the circuit court characterized as the "only credible testimony on what happened," clearly indicated that what happened on July 2, 2019, occurred on a single evening when Masuda-Mercado returned to J.E.'s residence after having moved out the year prior. Further, J.E.'s testimony about the events of July 2, 2019, was clearly distinct from her testimony as to any prior sexual acts.

J.E.'s testimony regarding "sexual acts" prior to July 2, 2019, went directly to Masuda-Mercado's interactions with J.E. between 2014 and 2018, which was the relevant period for Count 2. The "breadth" of the testimony regarding prior sexual acts was merely a product of how frequently those acts occurred. A review of the transcripts shows that the timelines for the alleged acts of Count 1 and Count 2 were clearly delineated during the course of trial. Affording due credit to the jury as factfinder, there was no reasonable possibility that the jury would have misunderstood the testimony to confuse Masuda-Mercado's prior conduct with his specific conduct on the night of July 2, 2019.

Regarding Masuda-Mercado's acts on July 2, 2019, when he was alone with J.E. in her bedroom, J.E. testified that Masuda-Mercado threatened to pull down her shorts and tried to

touch her vagina. If found by the jury to have occurred, these acts in context would support a conviction on the Count 1 offense of Attempted Sexual Assault in the First Degree. One necessary element as to the conviction for Attempted Sexual Assault in the First Degree was that Masuda-Mercado intended to sexually penetrate J.E. Given that the jury heard testimony regarding multiple prior instances in which Masuda-Mercado had sexually penetrated J.E.,[10] it was reasonable for the jury to infer that Masuda-Mercado's acts on July 2, 2019, constituted a "substantial step in a course of conduct" intended by Masuda-Mercado to culminate in sexual penetration of a minor under the age of fourteen years.[11]

The ICA also cited the "lack of specificity in the culminated offense" as a factor in finding reversible error.

---

[10] While the "testimony related to sexual acts occurring prior to Count 1's timeframe" could not be considered as to the conduct element of Count 1, that testimony could have properly been considered as evidence of Masuda-Mercado's intent for purposes of the attempt offense. See State v. Kiese, 126 Hawaiʻi 494, 502-03, 273 P.3d 1180, 1188-89 (2012) (quoting State v. Sadino, 64 Haw. 427, 430, 642 P.2d 534, 536-37 (1982)) ("[T]he mind of an alleged offender may be read from his acts, conduct, and inferences fairly drawn from all the circumstances."); accord Hawaiʻi Rules of Evidence Rule 404(b) (2016) (allowing for the admission of "[e]vidence of other crimes, wrongs, or acts" where such evidence is probative of intent).

[11] The attempt instruction here provided, "Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Sexual Assault in the First Degree." This language is nearly identical to the attempt instruction at issue in State v. Sawyer, 88 Hawaiʻi 325, 335, 966 P.2d 637, 647 (1998), which we upheld as "not 'prejudicially insufficient, erroneous, inconsistent, or misleading." Id. There, we reasoned that the attempt instruction, which was patterned after HRS § 705-500(2) (1993), was proper because it was clear, contained qualifying language, and did not instruct the jury that the defendant's conduct alone was a "substantial step" of the offense. Id.

Masuda-Mercado was convicted on Count 1 of Attempted Sexual Assault in the First Degree. The culminated offense, Sexual Assault in the First Degree, occurs upon knowing sexual penetration of a minor under the age of fourteen years. HRS § 707-730(1)(b). By definition, sexual penetration can happen in a number of ways, including cunnilingus and/or digital penetration of the genital opening. HRS § 707-700. As to Count 1, the Bill alleged that Masuda-Mercado had licked and/or digitally penetrated J.E.'s genitals. J.E. testified that Masuda-Mercado had threatened to pull down her shorts and attempted to touch her vagina. She also testified that on multiple prior occasions Masuda-Mercado had touched her vagina under the clothes and licked her vagina. In closing, the State argued as to Count 1 that Masuda-Mercado "wanted to put his head between [J.E.'s] legs" and "tried to touch her vagina." The proof tracked the Bill. The evidence presented by the State conformed with the limitations it imposed on itself in the Bill. See Robinson, 600 A.2d at 361. Thus, there is no basis to conclude that the jury based its Count 1 conviction on any "conduct going beyond the [B]ill."

> **3. There was no prejudicial error in the definition of "sexual penetration" in Count 1**

Masuda-Mercado argues that "[t]he ICA rightly held that the circuit court erred in giving . . . expansive statutory

definitions" of the terms "sexual penetration" and "sexual conduct." These "expansive" definitions, he argues, "stray[ed] beyond the limitations imposed by the [Bill]." We disagree and conclude that the modified definition of "sexual penetration" in the jury instruction was not prejudicially erroneous.

As an initial matter, the definition of "sexual penetration" provided in the jury instructions was not broadened in relation to the Bill, which included the full statutory definition of the term. As such, and contrary to Masuda-Mercado's contention, the definition of "sexual penetration" given in the instructions was narrower than the definition provided in the Bill because the circuit court modified the statutory definition by removing all reference to fellatio or anal penetration.

The ICA concluded that including the term "deviate sexual intercourse" in the instruction was error, reasoning that "[a]lthough the State presented no evidence of deviate sexual intercourse as statutorily defined, there is a reasonable possibility the jury may have interpreted Masuda-Mercado's alleged sexual interactions with complainant as deviating from the norms of society." We have held that the instructions defining an offense "should refer only to those items or factors having a rational basis in the evidence adduced at trial and not otherwise excludable." State v. Kupihea, 98 Hawaiʻi 196, 206, 46

P.3d 498, 508 (2002).  Thus, to the extent that there was no basis in the evidence to support a finding of "deviate sexual intercourse" as statutorily defined, the circuit court erred in including that term in the instruction.

However, our analysis does not end there.  See Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.  Examining the instruction in light of the entire proceedings, we conclude that any error resulting from the inclusion of "deviate sexual intercourse" in the jury instructions could not have prejudiced Masuda-Mercado and was harmless beyond a reasonable doubt.

Even if, as the ICA posits, the jury understood "deviate sexual intercourse" to mean any "sexual interactions . . . deviating from the norms of society," the error would have nevertheless been harmless.  The application of that definition to the evidence actually presented at trial would have been sufficient to support a finding of "sexual penetration" because, as argued by the State, "[a]ny kind of sexual intercourse between [Masuda-Mercado] and [J.E.], 'deviate' or otherwise, would suffice to prove the offenses here, given [J.E.'s] age."

The jury heard testimony from J.E. that Masuda-Mercado threatened to take down her pants and attempted to touch her vagina.  The jury had previously heard testimony that Masuda-Mercado had performed cunnilingus on J.E. and touched her vagina under the clothes with both his hand and an object on multiple

30

occasions.  Additionally, the jury was instructed that "[y]ou must consider only the evidence that has been presented to you in this case and inferences drawn from the evidence which are justified by reason and common sense," and "[y]our verdict must be based solely on the evidence presented."  On this record, there was no evidence presented of any other "sexual interactions" that would not have been sufficient, if believed by the jury to have occurred, to support a finding that Masuda-Mercado attempted to sexually penetrate J.E. on July 2, 2019.

To the extent that inclusion of the term "deviate sexual intercourse" without further definition was in error, there is no reasonable possibility that it contributed to Masuda-Mercado's conviction.  Accordingly, any error as to Count 1 was harmless beyond a reasonable doubt.

## C.   The Circuit Court's Instructions as to Count 2 Were Not Erroneous

As established above, while the State is limited to proving the particulars outlined in the Bill at trial, nothing in our caselaw or in that of other jurisdictions suggests that the specific acts outlined in a bill of particulars must also be reproduced in the jury instructions as a matter of law.  See Robinson, 600 A.2d at 361; Brown, 817 P.2d at 438.

The ICA found prejudicial error where "the Bill of Particulars Count 2 limited sexual contact to the touching of

31

the complainant's genitals whereas the jury was instructed more expansively that 'sexual contact' meant any touching of sexual or other intimate parts." Specifically, the ICA reasoned that "testimony referr[ing] to 'privates' as opposed to 'genitals' . . . may have contributed to Masuda-Mercado's Count 2 conviction." We disagree. As argued by the State, "there was no actual variance between the proof offered at trial and the acts alleged in the [Bill]."

Here, although the definition of "sexual contact" encompassed conduct outside of the specific acts alleged in Count 2 of the Bill, any error in providing that definition was harmless beyond a reasonable doubt. The fact that the statutory definition was provided in both the Bill and the jury instruction demonstrates that, contrary to the ICA's holding, the jury instruction did not expand the conduct for which the jury could have sustained a conviction against Masuda-Mercado for Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.

J.E. expressly testified that between November 1, 2014, and August 31, 2018, Masuda-Mercado usually touched her vagina with his hands but that he also used a vibrating sex toy to rub her vagina on multiple occasions and twice licked her vagina with his tongue. J.E. also testified that on at least one occasion, Masuda-Mercado pushed his penis against her vagina

through their clothing while laying on top of her. At all relevant times, J.E. was under the age of fourteen. When asked to clarify where on her body Masuda-Mercado had touched her, she replied, "[m]y vagina." The term "vagina," while perhaps imprecise and non-technical, had a clear meaning in context of the testimony. That she used the term "vagina" as opposed to "genitals" is an unimportant variance between the proof and the Bill and should be ignored. Erickson, 60 Haw. at 9, 586 P.2d 1023; Charles A. Wright & Arthur R. Miller, 1 Federal Practice and Procedure § 130 (5th ed. May 20, 2025 update) ("[U]nimportant variances will be ignored.").

The same is true of the term "privates," which was not actually used by J.E. in her testimony. Rather, on cross-examination, defense counsel asked J.E. if she had told her mother that Masuda-Mercado had licked her in her "private parts." The State reiterated the question on redirect. And while it is true that young children may use the term "privates" or "private parts" to describe body parts other than their genitals, there was no such ambiguity here. The questions about J.E.'s "private parts" came after she had testified on direct that Masuda-Mercado would use his tongue to lick her vagina.

Regardless of the precise words J.E. used to describe Masuda-Mercado's actions, all of J.E.'s testimony relevant to Count 2 was limited to instances of Masuda-Mercado contacting

her vagina, whether with his tongue, his hand, an object, or through their clothes with his penis.  There was no testimony of other contact during the relevant period for Count 2 that might reasonably be misconstrued as touching J.E.'s "sexual or other intimate parts."  See HRS § 707-700.  Further, there was no contrary testimony or clarifying evidence put on by the defense.  The defense's lone witness, Angelica Soto, was never present when the conduct occurred and testified only that she didn't believe it when J.E.'s mother told her what Masuda-Mercado had done to J.E.

It was the province of the jury to interpret and weigh the evidence before it.  Kelekolio, 74 Haw. at 515, 849 {.2d at 75.  And, as reiterated above, the jury was instructed that it "must consider only the evidence that has been presented . . . in this case."  On this record, there is no reasonable possibility that the use of the term "vagina," or limited use of "privates," as opposed to "genitalia" could have contributed to Masuda-Mercado's conviction as to Count 2.

//

//

//

//

//

## V.    CONCLUSION

For the foregoing reasons, the ICA's October 11, 2024 Judgment on Appeal is reversed and the Circuit Court of the Third Circuit's December 16, 2022 Judgment of Conviction and Sentence is affirmed.

Charles E. Murray III
for petitioner

Benjamin E. Lowenthal
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens